**Michael L. PASCHALL, Appellant**
**(Defendant Below),**

v.

**STATE of Indiana, Appellee**
**(Plaintiff Below).**

No. 1285 S 504.

Supreme Court of Indiana.

June 8, 1988.

J.J. Paul, III, James H. Voyles, Jr., Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Amy Schaeffer Good, Deputy Atty. Gen., Indianapolis, for appellee.

DICKSON, Justice.

Defendant Michael Paschall, convicted of possession of cocaine with intent to deliver, a class A felony, claims the trial court erroneously denied his motion to suppress and admitted into evidence items seized during an unreasonable and illegal search.

On December 24, 1984, defendant was injured in a one-car accident on interstate highway I–465 in Marion County. His Chevrolet Corvette automobile was totally disabled. When Sergeant Steve Rendleman of the Marion County Sheriff's Department arrived at the accident scene, fire personnel, paramedics, ambulance service personnel and other police officers were already present. Scattered debris was removed from the highway, and rescue personnel and vehicles were contained within the median area. Sergeant Rendleman, as officer-in-charge at the scene, began preparing an accident report and approached defendant, who was receiving medical treatment in the ambulance, to ask questions. Sergeant Rendleman also radioed for a wrecker and for a report on the license plate of the disabled vehicle. He instructed Deputy Sheriff Jerry Morgan to look inside the Corvette for a registration.

Officer Morgan searched the vehicle for the registration by quickly scanning the interior of the car, checking above the sun visor and on the dash, looking above and under the seats, inspecting the pocket on the backside of the driver's seat, and unsuccessfully trying to open the storage compartment between the seats. Unable to find the registration in these expected places, and before checking with Sergeant Rendleman to determine if identification was found on the driver, Officer Morgan proceeded to unzip a closed gym bag found behind the front seat. In the gym bag he discovered a set of balance scales, a plastic bag containing white powder, and a document which appeared to describe possible drug transactions. He then proceeded to unzip and inspect a soft luggage suitcase and discovered other drug paraphernalia.

While the vehicle was being searched for registration papers, Sergeant Rendleman received a radio report that the license plate on the Corvette was registered to defendant for a 1984 Cadillac and continued his efforts to question defendant regarding his identification. Defendant was at first disoriented and unable to provide sufficient answers, but he gradually appeared to become coherent and responded with moans and pointed to his leg where two wallets were found. The first wallet contained cash and some personal papers but lacked sufficient identification. The second wallet held defendant's drivers license, credit cards, employee identification card, and vehicle registration. In inspecting the second wallet, however, Sergeant Rendleman failed to notice the vehicle registration, which was not found until a subsequent search at the police station. Likewise, proper documents regarding the transfer of plates from the Cadillac to the Corvette were also discovered to have been among the papers on defendant's person.

Items observed during Officer Morgan's search of the gym bag and suitcase subsequently served as a basis to obtain a warrant authorizing the search of a locked briefcase also found in defendant's car. Inside the briefcase were two plastic bags together containing over 14 grams of cocaine.

### Gym Bag Search

■ The first issue is whether the police intrusion into defendant's gym bag constituted a prohibited unreasonable search and seizure under the Fourth Amendment to the United States Constitution.

Resolution of this issue is guided by *Cady v. Dombrowski* (1973), 413 U.S. 433, 439, 93 S.Ct. 2523, 2527, 37 L.Ed.2d 706, 713, which also involved a warrantless automobile search:

> The ultimate standard set forth in the Fourth Amendment is reasonableness. In construing this command, there has been general agreement that "except in certain carefully defined classes of cases, a search of private property without proper consent is 'unreasonable' unless it has been authorized by a valid search warrant." [citation omitted] One class of cases which constitutes at least a partial exception to this general rule is automobile searches.

In *Cady,* the United States Supreme Court approved a police search of an automobile disabled as a result of an accident, wherein police opened a locked trunk which the police officer reasonably believed to contain a revolver vulnerable to intrusion by vandals. As in the present case, the officer in *Cady* was not using the search as a subterfuge for criminal investigation.

> The Framers of the Fourth Amendment have given us only the general standard of "unreasonableness" as a guide in determining whether searches and seizures meet the standard of that Amendment in those cases where a warrant is not required. * * * Where, as here, the trunk of an automobile, which the officer reasonably believed to contain a gun, was vulnerable to intrusion by vandals, we hold that the search was not "unreasonable" within the meaning of the Fourth and Fourteenth Amendments.

*Id.* at 448, 93 S.Ct. at 2531, 37 L.Ed.2d at 718.

Indiana law requires an officer to make an accident report obtaining specified information if it is available. Ind.Code § 9–3–1–2. A person in control of a motor vehicle must have the car registration in the vehicle or on his person. Ind.Code § 9–1–4–5.

In *Muegel v. State* (1971), 257 Ind. 146, 151, 272 N.E.2d 617, 620, police officers were permitted to investigate abandoned vehicles including the right to search for a registration certificate in "those areas of a vehicle where it would reasonably be expected that such a certification of registration might be found." Similarly, in *South Dakota v. Opperman* (1976), 428 U.S. 364, 368, 96 S.Ct. 3092, 3097, 49 L.Ed.2d 1000, 1005, the United States Supreme Court observed:

> In the interests of public safety and as part of what the Court has called "community caretaking functions," * * * automobiles are frequently taken into police custody. Vehicle accidents present one such occasion. To permit the uninterrupted flow of traffic and in some circumstances to preserve evidence, disabled or damaged vehicles will often be removed from highways or streets at the behest of police engaged solely in caretaking and traffic-control activities.

■ The United States Supreme Court has expressly approved warrantless inventory searches as "reasonable" under the Fourth Amendment. *Colorado v. Bertine* (1987), 479 U.S. 367, 107 S.Ct. 738, 93 L.Ed. 2d 739; *Illinois v. Lafayette* (1983), 462 U.S. 640, 103 S.Ct. 2605, 77 L.Ed.2d 65; and *Opperman, supra.* In describing the nature of the inventory search exception, Chief Justice Rehnquist wrote in *Bertine:*

> In the present case, as in Opperman and Lafayette, there was no showing that the police, who were following standardized procedures, acted in bad faith or for the sole purpose of investigation. In addition, the governmental interests justifying the inventory searches in Opperman and Lafayette are nearly the same as those which obtain here. In each case, the police were potentially responsible for the property taken into their custody. By securing the property, the police protected the property from unauthorized interference. Knowledge of the precise nature of the property helped guard against claims of theft, vandalism, or negligence. Such knowledge also helped to avert any danger to police or others that may have been posed by the property.

479 U.S. at ——, 107 S.Ct. at 742, 93 L.Ed. 2d at 746. The facts disclosed by the

record do not permit us to characterize Officer Morgan's actions as falling within the inventory search exception. His admitted sole purpose in opening the gym bag was to search for registration documents. He was not making a list of property taken into police custody. While a wrecker had been called, the police had not impounded the vehicle, and it remained the owner's choice to designate where it was to be towed. While the police could have impounded the vehicle in similar situations as a proper exercise of caretaking and traffic control activity and thereafter to inventory its contents, the fact remains that they did not do so here.

While the present case thus does not present an inventory search as authorized in *Opperman,* the initial question here is the "reasonableness" of the police activity in unzipping and searching the gym bag. The officer's conduct was a routine administrative function. There is no claim that Officer Morgan's initial search of the gym bag was a subterfuge for criminal investigation. Common sense dictates that the officer was not unreasonable under the circumstances in looking for the vehicle registration in the gym bag. The evidence resulting from the gym bag search was not erroneously admitted.

### Suitcase Search

■ Having inadvertently discovered indications of probable criminal activity in the course of the gym bag search, Officer Morgan's purpose in unzipping and searching the suitcase was not merely to look for the vehicle registration certificate. The lawfulness of the suitcase search is controlled by *Arkansas v. Sanders* (1979), 442 U.S. 753, 762–63, 99 S.Ct. 2586, 2593, 61 L.Ed.2d 235, 244, in which the police had ample probable cause to stop a vehicle and seize a suitcase believed to contain contraband:

> We conclude that the state has failed to carry its burden of demonstrating the need for warrantless searches of luggage properly taken from automobiles. A closed suitcase in the trunk of an automobile may be as mobile as the vehicle in which it rides. But as we noted

in Chadwick, the exigency of mobility must be assessed at the point immediately before the search—after the police have seized the object to be searched and have it securely within their control. [citation omitted] Once police have seized a suitcase, as they did here, the extent of its mobility is in no way affected by the place from which it was taken. Accordingly, as a general rule there is no greater need for warrantless searches of luggage taken from automobiles than of luggage taken from other places.

We conclude that while Officer Morgan's search of the gym bag for an automobile registration certificate may have been reasonable under the circumstances, *Sanders* requires recognition that the subsequent opening and search of the separate suitcase in the absence of exigent circumstances constituted an unreasonable warrantless search in violation of the Fourth Amendment. Once cognizant of probable cause for criminal investigation, the police should have delayed further search into constitutionally protected areas until judicial approval has been obtained, if possible without risking themselves or loss of the evidence. By utilizing information discovered in the improper warrantless search of the suitcase to obtain a warrant to search the briefcase, police tainted the warrant with the illegality of their earlier actions. The evidence inside the briefcase thus became the "fruit of the poisonous tree" and thus inadmissible. *Wong Sun v. United States* (1963), 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441; *Brown v. Illinois* (1975), 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416. Because of the significance at trial of the contents of both the suitcase and the briefcase, the resulting conviction cannot stand.

The judgment of the trial court is reversed.

SHEPARD, C.J., and DeBRULER, J., concur.

GIVAN, J., dissents with opinion, in which PIVARNIK, J., concurs.

GIVAN, Justice, dissenting.

I respectfully dissent from the majority opinion's holding that the opening of appellant's suitcase was an illegal search. The majority cites *Arkansas v. Sanders* (1979), 442 U.S. 753, 99 S.Ct. 2586, 61 L.Ed.2d 235, to support the holding that the search was illegal. However, there is a vast difference between the *Sanders* case and the case at bar. In *Sanders, supra,* the police officers had received confidential information that Sanders was arriving on an airplane and had drugs in his luggage. After observing Sanders alight from the airplane and enter a taxi with his luggage, they stopped the taxi, had the driver open the trunk, retrieved Sanders' suitcase, and opened it without his permission.

In the case at bar, we have an entirely different situation. Appellant had been seriously injured in an automobile accident and his vehicle had been disabled. The police officers had a duty not only to take care of appellant but to take charge of his automobile and its contents for safekeeping. In so doing, they were entitled— in fact had a duty—to make an inventory check of the automobile and the objects therein to determine if anything needed immediate attention and to secure valuables from possible theft or vandalism.

Although the majority cites *South Dakota v. Opperman* (1976), 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000, which is authority for the above statement, they do not fully apply the *Opperman* case which is almost identical to the case at bar and is not at all parallel to *Sanders.*

The trial court should be affirmed.

PIVARNIK, J., concurs.