James F. COLLINS, Appellant
(Defendant below),

v.

STATE of Indiana, Appellee
(Plaintiff below).

No. 84A01–8906–CR–210.

Court of Appeals of Indiana,
First District.

Jan. 31, 1990.
Rehearing Denied March 20, 1990.

John A. Kesler, Sr., Kesler & Kesler, Terre Haute, for appellant.

Linley E. Pearson, Atty. Gen., Louis E. Ransdell, Deputy Atty. Gen., Office of Atty. Gen., Indianapolis, for appellee.

ROBERTSON, Judge.

The defendant-appellant James F. Collins appeals his conviction by a jury of the Class C felony of possession of cocaine in the amount of more than three grams.

We affirm.

A review of the facts favorable to the judgment shows that on April 11, 1986, Linn Carlyle Ruel came upon an automobile accident on Bolton Road in Vigo County. Ruel observed an automobile that had apparently struck a utility pole. The pole had been sheared off by the impact, and the vehicle was severely damaged. Ruel also saw Collins sitting behind the wheel of the car and saw that Collins was somewhat dazed, but was eventually able to exit the vehicle. He had a jacket with him at that time, although Ruel could no longer describe or identify it. Ruel, being concerned for Collins' well being, offered him a ride, which was accepted. Ruel then took Collins to a nearby house and let him out. The house belonged to an acquaintance of Collins. After calling the authorities, Ruel returned to the scene of the accident to await their arrival.

When a deputy arrived on the scene, he met Ruel who explained what he had seen and done. The deputy, having observed the apparent violence of the accident, and having heard Ruel's description of the possibly injured Collins, proceeded with Ruel to the residence in question. When he arrived, the deputy observed that the front door was ajar several inches and that Collins was reclining on the couch. When he knocked and identified himself, Collins only moaned. Believing that Collins might be seriously injured, based upon Collins' response, the condition of the car, and Ruel's statement, the deputy entered the residence and attempted to rouse Collins.

Rousing Collins proved to be difficult, but he was eventually able to respond that he was not injured and he denied having been in an accident. However, he recanted the denial after Ruel identified him. When Collins admitted to being the driver of the vehicle, the deputy advised him of the implied consent statute, and Collins agreed to be transported to the jail for a breath test. The deputy believed that Collins had been driving while intoxicated based upon a strong odor of alcohol, the presence of a half-full bottle of whiskey, slurred speech and unsteady walking.

When Collins arose from the couch, he picked up a black leather jacket. When they got outside, the jacket was placed in the front seat of the patrol car and Collins was frisked. While inside the residence, and while at the car, Collins stated that the jacket was his.

When they arrived at the jail, the deputy, as was the standard procedure, placed the

jacket on the counter and took Collins to a room for an intoxilyzer test. Collins, however, asked to be taken to the hospital because he was in pain, and the deputy took him there. The blood alcohol test that was done at the hospital showed a B.A.C. of .20%.

With the refusal to take the intoxilyzer test at the jail, the jail's chief matron performed an inventory search of the jacket, as was standard procedure.[1] In an inside pocket, she found a plastic bag that contained two clear plastic bags of white powder. The contents of these bags were subsequently tested at the Indiana State Police laboratory. The larger of the two bags contained 26.5 grams of 49.5% pure cocaine.

Collins raises seven issues on appeal.

## I.

Collins states his first issue as:

Whether the search of the defendant's jacket at the jail, done without a warrant on the ground that it was an inventory search in connection with his book-in to the jail, was an unconstitutional search because the whole procedure was a sham undertaken prior to defendant's arrest, and defendant was not in fact booked into the jail.

▇ Initially, and in connection with this issue, Collins argues that he was never placed under arrest. The record would show that the deputy never uttered the "magic words" and that the deputy testified that he hadn't arrested Collins as of the time they arrived at the jail.

IND.CODE 9–4–1–134 allows a law enforcement officer to arrest without a warrant on the occasion of a driving under the influence violation where there has been an accident and the driver has left the scene of the accident. The facts of this appeal substantiate the application of that statute.

Additionally, I.C. 9–11–4–2, which deals with the offering and requirement of sobri-ety tests, authorizes transportation for the administering of the test.

In either instance we are of the opinion that Collins was, in fact, under arrest, or in the alternative, was in lawful custody of the deputy when they were at the jail. That being the case, coupled with the fact that Collins' jacket was placed in the care and possession of the matron pursuant to established procedure, there was sufficient reason to proceed with the inventory search.

In reliance upon cited federal authorities, the case of *Dearing v. State* (1979), 271 Ind. 432, 393 N.E.2d 167 (Hunter, J., dissenting) gave approval to inventory searches. *Dearing* observes that a case-by-case examination is appropriate and also stated that, all other things being equal, such searches will be upheld so long as they serve a proper governmental purpose and do not amount to an excessive intrusion. *See also Equia v. State* (1984), Ind. App., 468 N.E.2d 559. More recently, our supreme court in *Paschall v. State* (1988), Ind., 523 N.E.2d 1359, at 1361, adopts the statement of the Chief Justice as it appears in *Colorado v. Bertine* (1987), 479 U.S. 367, 107 S.Ct. 738, 93 L.Ed.2d 739:

> In the present case, as in [*South Dakota v. Opperman* (1976) 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000] and [*Illinois v. Lafayette* (1983) 462 U.S. 640, 103 S.Ct. 2605, 77 L.Ed.2d 65], there was no showing that the police, who were following standardized procedures, acted in bad faith or for the sole purpose of investigation. In addition, the governmental interests justifying the inventory searches in *Opperman* and *Lafayette* are nearly the same as those which obtain here. In each case, the police were potentially responsible for the property taken into their custody. By securing the property, the police protected the property from unauthorized interference. Knowledge of the precise nature of the property helped guard against claims of theft, vandalism, or negligence. Such knowl-

---

**1.** The parties are in disagreement as to when the matron started the search of Collins' jacket. For the purpose of this opinion, establishment of the exact sequence of events is not determinative of the issue.

edge also helped to avert any danger to police or others that may have been posed by the property.

*Dearing* says that the interests which support inventory searches are protection of the police from danger, protection of the police against claims and disputes over lost or stolen property, and protection of the owner's property while it remains in police custody. Collins' individual interest in privacy must be balanced against the foregoing interests.

The *Lafayette* case addresses some of Collins' contentions and is worthy of consideration within the factual framework of this case. Lafayette was arrested for disturbing the peace and taken to the station house where he was ordered to empty his pockets and place the contents on a counter. Lafayette was also carrying a purse-type shoulder bag which he also placed on the counter. Among the contents of his purse-type shoulder bag, ten amphetamine pills were found which resulted in Lafayette's arrest for possession of a controlled substance. In due course, Lafayette's case reached the U.S. Supreme Court. There it was decided, among other things, that it is reasonable for police to search the personal effects of a person under lawful arrest as a part of the routine administrative procedure at a police station house incident to booking and jailing the suspect, that the type of search does not rest on probable cause and that the absence of a warrant is immaterial.

In reversing the state court's decision that less intrusive means could have been used in searching the purse-type bag, such as sealing it in a plastic bag or box or other secured place, the Supreme Court stated:

> The reasonableness of any particular governmental activity does not necessarily or invariably turn on the existence of alternative "less intrusive" means. In *Cady v. Dombrowski*, 413 U.S. 433, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973), for example, we upheld the search of the trunk of a car to find a revolver suspected of being there. We rejected the contention that the public could equally well have been protected by the posting of a guard over the automobile. In language equally applicable to this case, we held, "[t]he fact that the protection of the public might, in the abstract, have been accomplished by 'less intrusive' means does not, by itself, render the search unreasonable." We are hardly in a position to second-guess police departments as to what practical administrative method will best deter theft by and false claims against its employees and preserve the security of the station house. It is evidence that a station house search of every item carried on or by a person who has lawfully been taken into custody by the police will amply serve the important and legitimate governmental interests involved.

> \*    \*    \*    \*    \*    \*

> ... we hold that it is not "unreasonable" for police, as a part of the routine procedure incident to incarcerating an arrested person, to search any container or article in his possession, in accordance with established inventory procedures. (Citations and footnote omitted.)

103 S.Ct. at 2610, 2611.

Notwithstanding Collins' arguments to the contrary, the evidence shows that the inventory search in this case closely comports with *Paschall* and *Lafayette*, for the reason that the matron was following a standardized procedure, the matron was not acting in bad faith, and she was not acting in an investigatory capacity.

We also note that *Lafayette* effectively overrules our previous holdings on inventory searches in *Bradford v. State* (1980), Ind.App., 401 N.E.2d 77, *trans. denied.*

## II.

The next issue raised by Collins is:

Whether defendant's attorney was deprived of an opportunity to properly prepare for the suppression hearing and the trial because the State failed to produce its evidence of defendant's admissions to the police, though such admissions had been specifically requested by defendant's attorney.

Collins sought a production of evidence which included a memorandum of the substance of all verbal statements alleged to have been made by Collins and a copy of all police reports regarding the case. The State filed a statement with the trial court that the complete file had been delivered. The file apparently contained no admissions or confessions that the jacket which contained the cocaine belonged to Collins.

At the hearing on the motion to suppress the deputy testified that Collins said the jacket belonged to him. At trial the deputy also testified that Collins twice admitted the jacket belonged to him, once in the house and again as they were getting in the police car. Collins argues that the testimony of the deputy surprised him and that the failure of the State to make known these admissions as a part of discovery requires a reversal of the conviction. Collins relies upon *Long v. State* (1982), Ind. App., 431 N.E.2d 875 for his argument.

■ A summary of remedies available to the trial court when faced with noncompliance of discovery orders is found in *Carter v. State* (1987), Ind., 512 N.E.2d 158 at 170, 171:

> The trial court is accorded deference in determining what constitutes substantial compliance with its discovery order and will not be reversed absent clear error. If a trial court finds that a discovery order has been violated, its choice of remedy for the violation is discretionary and will not be overturned absent a showing of abuse of that discretion. In selecting the proper remedy, the primary elements for the court's consideration are whether the breach was intentional or in bad faith and whether substantial prejudice resulted. The exclusion of evidence as a sanction for discovery abuse is not proper unless there is a showing that the prosecution engaged in a deliberate or other reprehensible conduct which thwarted the defendant's right to a fair trial. A defendant bears an even heavier burden when he seeks the extreme sanction of dismissal of the charges against

him, although that is one response available to the trial court. (Citations omitted.)

We are of the opinion that the contumacious conduct upon which *Long* was premised is not present in this case. The State complied with the discovery order and the admission was not in it or the police report. There is no readily ascertainable willful withholding or concealment on the part of the State. That being so, the sanctions listed in *Carter* or *Long* are not appropriate here.

■ Additionally, and assuming a violation of the discovery order did occur, the normal remedy is a continuance. *Patel v. State* (1989), Ind., 533 N.E.2d 580. Collins did not seek a continuance because of his surprise at the testimony given by the deputy. A waiver occurred. *Miller v. State* (1980), 273 Ind. 493, 405 N.E.2d 909.

### III.

■ Collins' next issue is:

Whether defendant was in custody and the focus of a criminal investigation at the time he admitted ownership of the jacket containing cocaine, so that such admissions should have been excluded from evidence because the police had not advised defendant of his *Miranda* rights.

Collins' argument is that he was never given his *Miranda* rights and that, as a result, the two admissions that the jacket which contained the cocaine was his should be excluded.

The State concedes that when Collins left the residence with the deputy an arrest had occurred.

The State relies upon *Orr v. State* (1984), Ind.App., 472 N.E.2d 627, *trans. denied,* for the proposition that *Miranda* warnings only apply to custodial interrogations and that no such interrogation occurred under the facts of this case.

To some extent the resolution of this issue depends upon the appropriate standard of review.[2]

---

2. The U.S. Supreme Court has held that the voluntariness of a confession need only be prov-

en by a preponderance of the evidence. *See Lego v. Twomey* (1972), 404 U.S. 477, 92 S.Ct.

In reviewing a trial court's determination of the voluntariness of a waiver and statement, we look to the totality of the circumstances. We review this question on appeal as we do other sufficiency evidence of probative value to support the trial court's finding. (Citation omitted.)

*Dudley v. State* (1985), Ind., 480 N.E.2d 881 at 897, *cert. denied,* —— U.S. ——, 109 S.Ct. 1655, 104 L.Ed.2d 169.

Collins urges that the facts should be viewed from the standpoint that the deputy elicited comments from Collins in order to make a case of possessing cocaine. On the other hand, the evidence indicates that the deputy did not know the cocaine existed until it was discovered by the matron at the jail and that the inquiries as to the jacket were intended to make sure Collins was carrying his own property.

The application of our standard of review supports the trial court's acceptance of the latter contention. If it does not appear that the purpose of the question and answer was to obtain a confession, it is not necessary to give the accused *Miranda* warnings. *Orr, supra.*

### IV.

The next issue is:

Whether the deputy, having entered the home without a warrant on the ground of exigent circumstances, unconstitutionally obtained the crucial evidence against defendant after he should have left the home because he had satisfied himself that there were no exigent circumstances.

■ A search warrant is a condition precedent to a valid search and seizure unless the exigencies of the situation mandate an immediate response. *Savage v. State* (1988), Ind., 523 N.E.2d 758. We are of the opinion that the facts show exigent circumstances for entering the home. The deputy had seen the wrecked vehicle, knew where Collins was, knew that Collins was probably injured in the accident, and Col-

lins only moaned when first contacted by the deputy.

However, it is Collins' position that the deputy should have left once he determined that Collins was all right. The facts would support a determination that Collins was in need of assistance and that the exigent circumstances continued to exist while the deputy was in the house.

### V.

Collins' fifth issue is:

Whether the question of the reliability of defendant's admissions had previously been determined against the State in prior litigation between the same parties, so that such admissions should have been excluded under the legal principles of collateral estoppel, double jeopardy, and the due process of law.

Collins had been found not guilty of a driving under the influence charge which stemmed from the events recounted at the beginning of this opinion. During the course of that trial Collins sought to strike the admission that he was driving the automobile which struck the utility pole. After some discourse the trial judge said:

The Court can't conclude that we have a clear admission from [Collins] that he was driving and I'm not going to consider that he made a, an admission that he was driving.

Collins' argument in regard to collateral estoppel applying to the admissions in the driving under the influence trial and the subsequent bar to the use of that evidence in the cocaine possession trial are based, in the main, upon the holdings expressed in *Ashe v. Swenson* (1970), 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469. *Ashe,* in very general terms, prevents the use of certain testimony in subsequent trials where there has been an acquittal at an earlier trial.

■ It is our opinion that in order for a collateral estoppel question to be present, the testimony in the first trial must have been admitted and considered by the trier of fact. Our reading of the ruling is that

619, 30 L.Ed.2d 618. Indiana sets the State's burden of proving voluntariness at beyond a

reasonable doubt. *Perry v. State* (1984), Ind., 471 N.E.2d 270.

the testimony in the first trial was admitted but assigned no credibility by the trier of fact and, as a result, had no bearing upon an ultimate issue. This distinction prevents a collateral estoppel question from being present in this appeal.

Equally important, in our opinion, is the fact that the question of whether Collins was the driver of the automobile does not bear in a material way on whether the jacket belonged to him.

### VI.

■ Collins next argues whether there was any evidence that he "knowingly" possessed cocaine. I.C. 35–41–2–2(b) states that a person engages in conduct "knowingly" if, when he engages in the conduct, he is aware of a high probability that he is doing so. Collins' picking up the coat which contained the cocaine and twice acknowledging the coat was his, is sufficient evidence for the jury to determine that Collins acted knowingly. It was reasonable for the jury to infer that Collins knew what he was carrying in his jacket pocket. *Bastin v. State* (1987), Ind.App., 510 N.E.2d 229.

### VII.

■ Collins' last issue is:

Whether the statute under which defendant was tried authorized his conviction of a Class C felony, or limited his exposure to conviction of a Class D felony.

The statute under which Collins was convicted is I.C. 35–48–4–6. It reads:

A person who, without a valid prescription or order of a practitioner acting in the course of his professional practice, knowingly or intentionally possesses cocaine (pure or adulterated) classified in schedule I or II commits possession of cocaine or a narcotic drug, a Class D felony. However, the offense is a Class C felony if the amount of the drug involved (pure or adulterated) weighs three (3) grams or more.

Collins argues that the statute says that one may be convicted of the Class D felony only for possession of more than three grams of the narcotic drug because it omits any mention of cocaine. We are of the opinion, and so hold, that the phrase "drug involved" includes both cocaine and the narcotic drug previously mentioned in the statute.

Judgment affirmed.

RATLIFF, C.J., concurs.

BAKER, J., dissents with separate opinion.

BAKER, Judge, dissenting.

Since I believe the search conducted in this case does not fall within the inventory search exception to the warrant requirement, I must dissent.

As the majority correctly asserts, inventory searches are subject to a case by case examination. The search conducted in the case before us amounted to an excessive intrusion into Collins' privacy interests, and, therefore, violates the fourth amendment's guarantee against unreasonable searches and seizures. The inventory search exception was developed to allow police a mechanism through which an arrested person's property can be properly cared for. Because I do not believe Collins was under arrest at the time the booking procedure took place, I disagree with the majority's application of the inventory search exception.

There is a dispute in this case of when Collins' arrest was actually effectuated. The record unequivocally indicates, however, that at the time the deputy placed the jacket on the front seat of the patrol car and at the time he handed the jacket to the booking clerk, Collins was not under arrest. The inventory search procedure was initiated when the deputy gave the jacket to the clerk. The resulting search was violative of the fourth amendment because the procedure began before Collins was arrested. The fact that Collins was subsequently arrested does not cure the fourth amendment violation. Similarly, the fact that standardized procedures were used to conduct the search does not excuse the unwarranted intrusion into Collins' protected privacy interest.

In support of its analysis, the majority refers to recent Supreme Court decisions regarding inventory searches. The cited cases, however, involve inventory searches *following* arrest. For example, the defendant in *Colorado v. Bertine* (1987), 479 U.S. 367, 107 S.Ct. 738, 93 L.Ed.2d 739 (adopted in *Paschall v. State* (1988), Ind., 523 N.E.2d 1359) was arrested and taken into custody before an inventory search was conducted on his van. Similarly, in *Illinois v. Lafayette* (1983), 462 U.S. 640, 103 S.Ct. 2605, 77 L.Ed.2d 65, the defendant was arrested for disturbing the peace prior to an inventory search of his shoulder bag. In fact, the majority's quotation of the following language from *Lafayette* illustrates the necessity of an arrest:

> [W]e hold that it is not "unreasonable" for police, as a part of the routine procedure *incident to incarcerating an arrested person*, to search any container or article *in his possession*, in accordance with established inventory procedures.

103 S.Ct. at 2610–11 (emphasis added.)

The facts of the present case are against the *Lafayette* holding for two reasons. First, the inventory search conducted was not incident to Collins' incarceration. He was not on his way to jail when the search was conducted. Second, the jacket was not in his possession when he entered the station house. The deputy had possession of the jacket which he released to the booking clerk.

In some instances, the timing of the arrest has not defeated a preceding search. I note that the United States Supreme Court has stated that: "where the formal arrest followed quickly on the heels of the challenged search of petitioner's person, we do not believe it particularly important that the search preceded the arrest rather than vice versa." *Rawlings v. Kentucky* (1980), 448 U.S. 98, 111, 100 S.Ct. 2556, 2564, 65 L.Ed.2d 633. *Rawlings* is distinguishable, however, because the arrest in that case took place within minutes following the challenged search. In the present case, Collins was first detained on April 11, 1986. He was not charged with possession, however, until April 23, 1986. A nearly two-week delay was not an arrest "following quickly on the heels" of the challenged search as contemplated in *Rawlings*. More importantly, the *Rawlings* court qualified its statement by noting that the fruits of the search could not be "necessary to support probable cause to arrest." 448 U.S. at 111, n. 6, 100 S.Ct. at 2564, n. 6. Unlike the scenario in *Rawlings*, the deputy in the present case did not have probable cause to arrest Collins with possession of cocaine without the fruits of the search initiated prior to his arrest on either operating a motor vehicle while intoxicated charge or the cocaine possession charge.

The result reached by the majority opens the door for police subterfuge. Namely, the police can employ station house detention for suspicion of a crime, not arrest the suspect, and perform an inventory search on his personal effects.

It is my position that Collins had a reasonable expectation of privacy in his jacket and its contents. This privacy interest was violated when his jacket was searched without benefit of a warrant and in the absence of a recognized exception to the warrant requirement. I would reverse his conviction based on the trial court's error in admitting the fruit of a search conducted in violation of the fourth amendment.