RILEY, Judge.
 

 STATEMENT OF THE CASE
 

 Defendant-Appellant Michael Moore (Moore) appeals from his convictions of dealing in cocaine
 
 [1]
 
 and reckless possession of paraphernalia
 
 [2]
 
 .
 

 We affirm.
 

 ISSUES
 

 Moore presents two issues for our review which we re-state as follows:
 

 1. Whether the trial court properly denied Moore’s motion to suppress evidence obtained in a warrantless search of the automobile in which Moore was a passenger.
 

 2. Whether the evidence is sufficient to support Moore’s convictions.
 

 FACTS AND PROCEDURAL HISTORY
 

 On or about April 10, 1993, Police Officer Red Elk stopped the vehicle in which Moore was a passenger on Interstate-65 (1-65) in Tippecanoe County. Deputy Elk observed erratic driving and the vehicle speeding excessively.
 

 After stopping the vehicle, Deputy Elk approached the vehicle and spoke with the
 
 *814
 
 driver, Kenneth Roberts. Elk detected the odor of alcohol on Roberts’ breath. He further observed that Roberts’ eyes were red and watery and his speech was slurred. Deputy Elk administered a field sobriety test to Roberts, which Roberts failed. Detective Tyrie arrived on the scene and administered a preliminary breath test to Roberts with a resultant blood alcohol content of .05%. Roberts then told Tyrie that he had been “doing weed and speed.” (R. 93). After being advised regarding implied consent, Roberts agreed to a chemical test. Roberts was placed under arrest.
 

 After placing Roberts under arrest, Deputy Elk and Detective Tyrie approached Moore, who was the passenger in the vehicle. The officers observed symptoms similar to those observed with Roberts. Moore admitted that he had been smoking marijuana. A third officer, Trooper Bass, arrived on the scene. After determining that Moore was also too impaired to drive, Deputy Elk called for a tow truck and proceeded to conduct an inventory search of the vehicle. Inside a paper bag in the glove compartment Deputy Elk found numerous small plastic bags marked “pony packs.” (R. 132). The bags were later determined to contain cocaine.
 

 Detective Tyrie secured Moore and frisked Moore for weapons. As Tyrie was frisking Moore, he pricked his finger on a sharp object. Upon investigation, Tyrie found a plastic straw with a sharp edge in Moore’s pocket. The end of the straw contained a white powdery substance which was later determined to be cocaine. There were 138 individual bags of cocaine with a total weight in excess of 33 grams.
 

 Moore was charged by information with dealing in cocaine, a class A felony; maintaining a common nuisance, a class D felony; reckless possession of paraphernalia, a class A misdemeanor; and failure to pay a controlled substance excise tax, a class D felony. Moore filed a pretrial motion to suppress evidence based on the nature of the search. The trial court denied the motion. A jury found Moore guilty of dealing in cocaine in an amount of three grams or more, and reckless possession of paraphernalia. Moore appeals.
 

 DISCUSSION AND DECISION
 

 I.
 
 Inventory Search
 

 A. The Warrant Requirement/Inventory Exception
 

 Moore contends that the trial court erred in denying his motion to suppress evidence because the evidence was not lawfully obtained. Specifically, Moore contends that the warrantless search of his glove compartment was not a lawful inventory search and therefore violated his Fourth Amendment rights.
 

 The trial court has broad discretion in ruling on the admissibility of evidence. We will not disturb its decision absent a showing of abuse of that discretion.
 
 Harless v. State
 
 (1991), Ind.App., 577 N.E.2d 245, 247.
 

 Our State Constitutional provision against unreasonable search and seizure provides as follows:
 

 The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search or seizure, shall not be violated; and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the person or thing to be seized.
 

 Article I, section 11, Ind. Const. The Indiana provision is virtually identical to the Fourth Amendment to the United States Constitution.
 

 Generally, a judicially issued search warrant is a condition precedent to a lawful search. The warrant requirement is nearly absolute, but it is subject to a few well-delineated exceptions. The burden of proof is on the State to prove that the warrantless search was conducted within the confines of one of the exceptions to the warrant requirement.
 
 Chimel v. California
 
 (1969), 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685;
 
 Harless,
 
 577 N.E.2d at 248. Here, the State seeks refuge under the inventory exception to the warrant requirement.
 

 The Supreme Court of the United States first recognized the so-called “inventory ex-
 
 *815
 
 eeption” in
 
 South Dakota v. Opperman,
 
 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976). The
 
 Opperman
 
 Court held that police may conduct a warrantless search of a properly impounded vehicle if the search remains within the permissible scope of an inventory of the vehicle’s contents.
 
 Id.
 
 The Indiana supreme court has recently re-affirmed its long-standing adherence to the inventory exception.
 
 Fair v. State
 
 (1993), Ind., 627 N.E.2d 427;
 
 see also Rabadi v. State
 
 (1989), Ind., 541 N.E.2d 271;
 
 Deneal v. State
 
 (1984), Ind., 468 N.E.2d 1029;
 
 Dixon v. State
 
 (1982), Ind., 437 N.E.2d 1318;
 
 Dearing v. State
 
 (1979), Ind., 393 N.E.2d 167.
 

 We are asked to consider whether the warrantless search of the vehicle in which Moore was a passenger was a permissible inventory search. Requisite to a proper conclusion on this issue is a basic understanding of the rationale behind the inventory search exception. The rationale of the exception is comprised of three parts: protection of private property in police custody, protection of police against claims of lost and stolen property and protection of police from possible danger.
 
 Opperman,
 
 428 U.S. at 396, 96 S.Ct. at 3110. An inventory search is by definition within a non-criminal context.
 
 Fair,
 
 627 N.E.2d at 431. The courts have felt confident to dispense with the probable cause requirement for inventory searches because “[w]hen an inventory is carried out in accordance with routine police procedures, there is an assurance that the intrusion will not exceed the scope necessary to fulfill [the above-enumerated] caretaking needs.”
 
 Rabadi,
 
 541 N.E.2d at 274. The ultimate standard dictated by the Fourth Amendment and Article 1, section 11 of the Indiana Constitution is reasonableness of the police conduct. Likewise the test of constitutionality in the inventory search context is reasonableness.
 
 Fair,
 
 627 N.E.2d at 431. The supreme court in
 
 Fair
 
 said the following:
 

 In determining the reasonableness of an inventory search, courts must examine all the facts and circumstances of a case.... This examination typically encompasses two overlapping sets of circumstances. First, the propriety of the impoundment must be established because the need for the inventory arises from the impoundment. Second, the scope of the inventory must be evaluated.... In borderline cases ... the ultimate character of the search is often most clearly revealed when both the necessitousness of the impoundment and the scrupulousness of the inventorying are viewed together.
 

 Id.
 
 at 431.
 

 B.
 
 Impoundment of the Vehicle
 

 The threshold issue is whether the impoundment, which provides the underpinnings for a valid inventory search, was in fact lawful. The supreme court in
 
 Fair,
 
 627 N.E.2d 427, held that to prevail on the issue of impoundment in terms of the community caretaking function, the prosecution must demonstrate: “(1) that the belief that the vehicle posed some threat or harm to the community or was itself imperiled was consistent with objective standards of sound policing ... and (2) that the decision to combat that threat by impoundment was in keeping with established departmental routine or regulation.”
 
 Id.
 
 at 433. (Citations omitted). The needs of the community have been held to be implicated where the arrest of the driver has left the automobile unattended on a public highway.
 
 Id.
 
 Since the vehicle would have been left unattended on 1-65 after the driver’s arrest, the decision to impound was clearly lawful.
 

 C.
 
 Scope of the Inventory Search
 

 Having decided that the decision to impound the vehicle was proper, and thus the decision to inventory proper, the issue becomes whether the search remained within the lawful scope of a permissible inventory search. Moore filed a pretrial motion to suppress which the trial court deferred ruling on. At trial, outside the presence of the jury, the court held a suppression hearing and concluded that Deputy Elk was following department standard operating procedures on inventory searches and was conducting an inventory search. The court said that the fact that Deputy Elk came across drugs while conducting the inventory search did not render the search illegal. Specifically, the trial court judge said: “I do not believe that
 
 *816
 
 [Elk] searched that glove box with the intent to find illegal drugs. Under the facts of this case, I believe the inventory began first. So, for that reason, I’m going to deny the [defendants’ motion to suppress and find that the search was valid.” (R. 127-128).
 

 To pass constitutional muster the search must be conducted pursuant to police department standard operating procedures.
 
 Fair,
 
 627 N.E.2d at 435. The Tippecanoe County Sheriffs Department standard operating procedure on inventory searches provides that:
 

 It will be the policy of this Department for all Officers who impound a vehicle for any reason to take the following actions.
 

 Inventory of all items in the vehicle, which are not regular parts or accessories to the car. The Inventory Report Form shall be filled out and attached to the case. Such action is necessary for the protection of the owner of the vehicle and his property and the protection of the Department from any claims which may later be made.
 

 (R. 116). The record reveals that Detective Tyrie completed the inventory search which Deputy Elk began and filled out the Vehicle Inventory Form with a detailed description of the items found in the vehicle.
 

 The State has the burden of demonstrating that the items were seized in the course of a routine inventory. In order to meet its burden the State:
 

 must do more than offer a mere statement of a police [officer] that the search was conducted as a routine inventory. The circumstances surrounding the intrusion must also indicate that the search was [carried out pursuant to] routine department procedures which are consistent with the protection of police from potential danger and false claims of lost or stolen property and the protection of those arrested.
 

 Rabadi,
 
 541 N.E.2d at 275.
 

 When asked by the court whether the glove box was searched with a view toward finding evidence of criminal activity or contraband, Deputy Elk said that “[w]hen [he] went to inventory the car, it was an initial inventory. However, when [he] looked at the glove compartment, it raised [his] curiosity. ... [He] naturally opened the glove compartment to see what [he] could find, with the idea that there was some sort of criminal contraband inside the glove compartment.” (R. 122). Then the trial court went on to elicit further testimony to clarify that Deputy Elk was already in the process of conducting an inventory search when this idea of finding contraband arose. The fact that a suspicion arose in the mind of Deputy Elk during the inventory search already properly initiated and in progress does not ■render the search pretextual.
 
 See Fair,
 
 627 N.E.2d at 436, n. 7. (“[a]n officer’s suspicion that evidence may be present ... is not automatically fatal to a search ... so long as the impoundment is pursuant to the community caretaking function and is not a mere subterfuge for investigation, the coexistence of investigatory and caretaking motives is permissible”), (citations omitted).
 

 The potential risks and the essential issue in this ease is whether the inventory search was actually conducted in a routine manner pursuant to department standard operating procedures or rather, whether it was used as a pretext to camouflage a complete investigatory search. If the facts of this case fall into the latter type of search, the search is unreasonable and will not be tolerated.
 
 Paschall v. State
 
 (1988), Ind., 523 N.E.2d 1359. In
 
 Paschall,
 
 the Indiana supreme court said that “[o]nce cognizant of probable cause for criminal investigation, the police should ... [delay] further search into constitutionally protected areas until judicial approval has been obtained.”
 
 Id.
 
 at 1362. However,
 
 Paschall
 
 is distinguishable because it did not involve the inventory search exception. However, the general proposition is applicable that upon suspicion of narcotic involvement, a police officer should obtain a warrant and cease further search. The officers in the present case repeatedly asked Moore and his co-defendant whether there was drugs in the ear. Moore gave his consent to the search of the trunk, but insisted that a warrant was necessary to search the glove compartment. Deputy Elk responded that no warrant was necessary because he was going to conduct an inventory search.
 

 
 *817
 
 There is sufficient indicia of a lawful inventory search present in this case. Detective Tyrie completed the formal inventory report with a complete list of Moore’s personal effects. Further, it has never been disputed that the initial stop was lawful and we have deemed the decision to impound as proper. Because the standard operating procedure and compliance with it has been sufficiently established in the record, we will indulge the reasonableness of this inventory search. However, we reiterate that investigative searches masquerading as inventory searches will not be tolerated. As we said in
 
 State v. Tucker
 
 (1992), Ind.App., 588 N.E.2d 579, “[a]n illegal search, though it be called an inventory search, is still an illegal search.”
 
 Id.
 
 at 581.
 

 II.
 
 Sufficiency
 

 Moore contends that the State faded to present sufficient evidence to support his convictions. Specifically, Moore argues that the State failed to prove that he knowingly and intentionally possessed cocaine. Moore’s argument places great weight on the defense’ theory that Moore was a mere passenger in the vehicle.
 

 Our standard of review for sufficiency of the evidence is well-settled. We neither reweigh the evidence nor determine the credibility of witnesses. We examine only the evidence most favorable to the State along with all reasonable inferences to be drawn therefrom. If there exists substantive evidence of probative value to establish every material element of an offense beyond a reasonable doubt, we will not disturb the conviction.
 
 Geans v. State
 
 (1993), Ind.App., 623 N.E.2d 435, 437.
 

 A person commits the crime of dealing in cocaine when he knowingly or intentionally possesses, with intent to deliver cocaine, pure or adulterated. I.C. 35-48-4-1(a)(2)(C). The offense is a class A felony if the drug weighs three grams or more. I.C. 35-48-4-l(b)(l). The charging information on this charge alleged the following: “[that] Michael N. Moore did knowingly and intentionally possess, with intent to deliver, cocaine, pure or adulterated, in an amount of three (3) grams or more.” (R. 10). Moore argues that his conviction of this charge cannot stand because there is insufficient evidence to prove that he knowingly or intentionally possessed cocaine.
 

 Moore cites
 
 Corrao v. State
 
 (1972), 154 Ind.App. 525, 290 N.E.2d 484, for the proposition that possession of contraband found in a vehicle may be imputed to the driver of the automobile, but may not be imputed to a passenger. In
 
 Corrao,
 
 four defendants were convicted of possession of marijuana. The marijuana was found in the trunk of the vehicle in which the four defendants were driving. We concluded that there was sufficient evidence from which the jury could infer that the driver of the vehicle and the passenger/owner of the vehicle had knowledge of the presence of the marijuana and had control over the automobile.
 
 [3]
 

 Id.
 
 290 N.E.2d at 488. Therefore, we found that constructive possession could be imputed to the driver and owner/passenger of the automobile, but not to the two “mere” back seat passengers.
 
 Id. We
 
 find that Moore more closely resembles the owner/passenger in
 
 Corrao
 
 than the mere backseat passenger.
 

 Moore argues that the State failed to present evidence that Moore exercised control over the glove compartment. Moore testified at trial that his brother owned the ear. Moore further testified that he (Moore) had not checked the glove compartment before driving the car and he did not know of the presence of the cocaine in the glove compartment. The co-defendant testified at trial that Moore had been driving the car up until a short time before they were stopped. The co-defendant further testified that Moore had had the car fixed for his brother and wanted Roberts to drive along 1-65 to see if the car had been properly repaired. There was testimony that Moore’s brother
 
 *818
 
 gave him permission to use the car and have it fixed. Thus, there is testimony in the record to support the inference that Moore had custody and control over the car. It is the function of the trier of fact to resolve conflicts in the testimony and determine the weight of the evidence and the credibility of the witnesses. The trier of fact is free to believe or disbelieve witnesses, as it sees fit.
 
 Hall v. State
 
 (1994), Ind.App., 634 N.E.2d 837. Moore asks us to reweigh the evidence and reweigh the credibility of the witnesses, and this we will not do.
 

 CONCLUSION
 

 If we had found that the inventory search was in fact investigative in nature at any time, we would have reversed the. trial court and invalidated the illegal search; however, we find that the police conduct was routine, administrative, in the interest of public safety and as part of the community caretaking function, and therefore the warrantless inventory search was reasonable under the Fourth Amendment and Article I, section 11 prescriptions.
 

 We further conclude that the evidence was sufficient to support Moore’s convictions.
 

 The trial court is affirmed in all respects.
 

 CHEZEM, J., concurs in result.
 

 KIRSCH, J., concurs.
 

 [1]
 

 . IND.CODE 35-48-4-1 (1993 Supp.).
 

 [2]
 

 . I.C. 35-48-4-8.3 (1993 Supp.).
 

 [3]
 

 . That two of the four defendants had knowledge of the presence of marijuana could be inferred from the police
 
 officer's
 
 testimony that he smelled marijuana coming out of the car upon the stop. That two of the four defendants possessed control over the vehicle that contained the marijuana could be inferred from the fact that one defendant was the owner of the vehicle and the other was the driver.
 
 Id.