Sylvester **PEETE**, Appellant–Defendant,

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 49A04–9611–CR–475.

Court of Appeals of Indiana.

April 9, 1997.

Transfer Denied June 10, 1997.

---

Patricia Caress McMath, Indianapolis, for Appellant–Defendant.

Pamela Carter Attorney General of Indiana and Carol A. Nemeth, Deputy Attorney General, Indianapolis, for Appellee–Plaintiff.

**OPINION**

RILEY, Judge.

*STATEMENT OF THE CASE*

Defendant-Appellant Sylvester Peete appeals following his conviction for possession of cocaine as a Class C felony.[1]

We affirm.

*ISSUES*

Peete presents the following two re-stated issues for our review:

1. Whether the record shows that Peete voluntarily, intelligently and knowingly waived his right to a jury trial.

2. Whether Peete received ineffective assistance of counsel due to his trial counsel's failure to object to the admissibility of the cocaine.

*FACTS AND PROCEDURAL HISTORY*

On June 30, 1995, Officer William Owensby and Detective Gary Morrolf of the Indianapolis Police Department were on routine patrol in the 4600 block of North College, when they observed a 1982 white Oldsmobile operating without an illuminated license plate. Due to this equipment violation, Officer Owensby stopped the vehicle in the 4600 block of North Guilford Avenue. As Officer Owensby approached the vehicle, the driver of the vehicle, Peete, informed him that he did not have a driver's license on his person. Officer Owensby asked Peete for his name and, Peete verbally identified himself as Eric Peete. Due to previous encounters with Peete, Officer Owensby knew that Peete

gave him a false first name. Upon being confronted with this fact by Officer Owensby, Peete admitted that he was Sylvester Peete, and he then told Officer Owensby that there may be an outstanding warrant on him. Indeed, Peete did have an outstanding warrant for driving while suspended, a misdemeanor. Officer Owensby informed Peete that he was under arrest. Accordingly, Peete was removed from the vehicle, searched and handcuffed.

In the interim, Detective Morrolf approached the passenger side of the vehicle to speak to the one front seat passenger and one back seat passenger. Detective Morrolf observed the front seat passenger reach down between his legs. When the passenger and Detective Morrolf made eye contact, the passenger put his hands in his lap. Both passengers were eventually removed from the vehicle and placed under arrest due to outstanding warrants on each of them.

Once all of the occupants of the vehicle were out of the car and handcuffed, Officer Owensby proceeded to inventory search the car. During the course of this inventory search, Officer Owensby located a black 35 mm. film canister under the front passenger seat. Officer Owensby proceeded to open the film canister, and inside, he found 24 cellophane plastic bags containing an off-white chunky substance. The substance was later determined to be crack cocaine, weighing 4.25 grams.

Prior to transporting the suspects, Officer Owensby advised Peete of his Miranda warnings, and Peete subsequently admitted that the cocaine in the film canister belonged to him. (R. 77, 81, 118–19).

On July 3, 1995, Peete was charged by information with possession of cocaine as a Class C felony. Peete signed a written *"Waiver Of Trial By Jury"* form, waiving his right to a jury trial. Accordingly, he was tried by the court and subsequently found guilty as charged. He now appeals arguing trial court error and ineffective assistance of counsel.

1. Ind.Code 35–48–4–6.

## DISCUSSION AND DECISION

### I. Waiver of Jury Trial

█ Peete contends that he did not voluntarily, knowingly and intelligently waive his right to a jury trial. Although Peete concedes that the record contains a signed waiver form, he argues that the trial court did not determine on the record whether he fully understood the rights that he was relinquishing.

█ The right to a jury trial is guaranteed by article I, section 13 of the Indiana Constitution and the Sixth Amendment to the United States Constitution. *Duncan v. Louisiana*, 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968), *reh'g denied; Belazi v. State*, 525 N.E.2d 351 (Ind.Ct.App.1988), *reh'g denied, trans. denied.* The right is further statutorily guaranteed in Indiana. *See* Ind.Code 35–37–1–2 (provides that all criminal trials be tried by a jury unless there is a joint waiver by the defendant, the prosecutor and the trial judge). The right to a jury trial on a felony charge is absolute. That is to say, absent a valid waiver, the defendant must be tried by a jury. *Eldridge v. State*, 627 N.E.2d 844, 848 (Ind.Ct.App. 1994), *trans. denied.* A person charged with a felony, as opposed to a person charged with a misdemeanor, need not request a jury trial in order to preserve the right. *Id.*

Turning to the case before us, the record contains a written *"Waiver Of Trial By Jury"* form signed by Peete, his attorney and the deputy prosecutor. Furthermore, prior to the commencement of the bench trial, the trial court engaged Peete in the following brief colloquy:

> COURT: Wait. Before we go forward here, I just want to double-check something. I do have a waiver of trial by jury. Mr. Peete, you still wish for the Court to go forward and hear this matter before the Court, rather than a jury trial, is that correct sir?
>
> PEETE: Excuse me Judge?
>
> COURT: You still want to have this heard by the bench, by the Court, rather than by a jury, correct?
>
> PEETE: Yes Judge.

> COURT: O.K., and you have no objection to my maintaining jurisdiction at this time, is that acceptable to you sir?
>
> PEETE: Yes Judge.

(R. 61–62).

Peete affirmatively waived his right to a jury trial when he signed the written waiver form. *See Hutchins v. State*, 493 N.E.2d 444, 445 (Ind.1986); *Rodgers v. State*, 275 Ind. 102, 415 N.E.2d 57, 58 (1981) (both of these cases stand for the proposition that the right to a jury trial in a felony charge may be waived in writing). In *Rodgers*, the defendant signed a written waiver form. The trial court also engaged in a brief exchange with the defendant on the record, similar to that engaged in here. The supreme court held that these facts constituted a sufficient waiver and the fact that a more extensive colloquy had not occurred would not vitiate the effectiveness of the waiver. 415 N.E.2d at 58. Based on the foregoing, we conclude that Peete waived his right to a jury trial in a knowing, intelligent and voluntary manner.

### II. Ineffective Assistance of Counsel

#### Validity of Inventory Search

█ Peete further contends that his trial counsel was ineffective for failing to object to the admissibility of the cocaine, which Peete contends was obtained as a result of an illegal inventory search. To prevail on a claim that counsel was ineffective for failing to make a proper objection, it must be shown that a proper objection would have been sustained by the trial court. *Vega v. State*, 656 N.E.2d 497, 504 (Ind.Ct.App.1996), *reh'g denied, trans. denied.* Absent such a showing, an appellant cannot prevail on an ineffective assistance of counsel claim. *See Lowery v. State*, 640 N.E.2d 1031 (Ind.1994), *reh'g denied, cert. denied Lowery v. Indiana*, —— U.S. ——, 116 S.Ct. 525, 133 L.Ed.2d 432 (1995).

█ The Fourth Amendment to the United States Constitution and article I, section 11 of the Indiana Constitution protect both privacy and possessory interests by prohibiting unreasonable search and seizures. *Culpepper v. State*, 662 N.E.2d 670, 675 (Ind.Ct. App.1996), *reh'g denied, trans. denied* (citing *Coolidge v. New Hampshire*, 403 U.S. 443, 91

S.Ct. 2022, 29 L.Ed.2d 564 (1971), *reh'g denied; Taylor v. State,* 659 N.E.2d 535, 537 (Ind.1995)). Generally, a judicially issued search warrant is a condition precedent to a lawful search. *Fair v. State,* 627 N.E.2d 427, 430 (Ind.1993). Searches and seizures conducted outside of the judicial process are *per se* unreasonable under the Fourth Amendment. The burden of proof rests upon the State to prove that the warrantless search falls within one of the narrow exceptions to the warrant requirement. *Mincey v. Arizona,* 437 U.S. 385, 390, 98 S.Ct. 2408, 2412, 57 L.Ed.2d 290 (1978); *Fair,* 627 N.E.2d at 430.

The State contends that the cocaine was discovered pursuant to a valid inventory search. As an alternate argument, the State argues that the cocaine was discovered pursuant to a valid search incident to arrest. Because we resolve this case based on the inventory exception, we do not address the State's alternate argument.

### A. The Initial Stop

■ We first note that no issue has been raised with regard to the initial stop of the vehicle. It is well-settled that a police officer may briefly detain a person whom the officer believes has committed an infraction or an ordinance violation. *See* 34–4–32–2; *English v. State,* 603 N.E.2d 161, 163 (Ind.Ct. App.1992), *reh'g denied.* It is a Class C infraction to operate a motor vehicle with equipment that is not in good working condition. Ind.Code 9–21–7–1; Ind.Code 9–21–7–13. The initial stop of Peete's vehicle was due to failure to keep the license plate properly illuminated. The initial stop was therefore valid. *See Walker v. State,* 527 N.E.2d 706, 708 (Ind.1988), *cert. denied Walker v. Indiana,* 493 U.S. 856, 110 S.Ct. 161, 107 L.Ed.2d 118 (1989) (holding that investigatory stop of vehicle was justified where license plate illumination and taillight were not functioning).

### B. The "Inventory Search" Exception

An exception to the warrant requirement has been carved out for routine inventory searches of properly impounded automobiles conducted pursuant to established police caretaking procedures. *Rabadi v. State,* 541 N.E.2d 271, 274 (Ind.1989). The Supreme Court of the United States first recognized the so-called "inventory exception" in *South Dakota v. Opperman,* 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976). The *Opperman* court held that the police may conduct a warrantless search of a properly impounded vehicle if the search remains within the permissible scope of an inventory of the vehicle's contents. *Id.* The Indiana supreme court has recently re-affirmed its long-standing adherence to the inventory exception. *See Fair,* 627 N.E.2d 427; *See also Rabadi,* 541 N.E.2d 271; *Deneal v. State,* 468 N.E.2d 1029 (Ind.1984); *Dixon v. State,* 437 N.E.2d 1318 (Ind.1982); *Dearing v. State,* 271 Ind. 432, 393 N.E.2d 167 (1979).

■ The rationale for the inventory exception is comprised of three parts: protection of private property in police custody, protection of police against claims of lost or stolen property, and protection of police from possible danger. *Opperman,* 428 U.S. at 396, 96 S.Ct. at 3110; *Moore v. State,* 637 N.E.2d 816, 819 (Ind.Ct.App.1994), *trans. denied, cert. denied Moore v. Indiana,* 513 U.S. 1165, 115 S.Ct. 1132, 130 L.Ed.2d 1093 (1995). An inventory search is by definition within a non-criminal context. *Moore,* 637 N.E.2d at 819 (citing *Fair,* 627 N.E.2d at 431). The ultimate standard dictated by the Fourth Amendment and article I, section 11 of the Indiana Constitution is reasonableness of the police conduct. *Id.* Likewise, the test of constitutionality in the inventory search context is reasonableness. *Id.* As our supreme court said in *Fair:*

> In determining the reasonableness of an inventory search, courts must examine all the facts and circumstances of a case.... This examination typically encompasses two overlapping sets of circumstances. First, the propriety of the impoundment must be established because the need for the inventory arises from the impoundment. Second, the scope of the inventory must be evaluated. Where either is clearly unreasonable, the search will not be upheld. In borderline cases, however, the ultimate character of the search is often most clearly revealed when both the necessitousness of the impoundment and the

scrupulousness of the inventorying are viewed together.

627 N.E.2d at 431. (Citations omitted).

### 1. The Decision to Impound

■ The threshold issue then is the propriety of the decision to impound. Our supreme court held that to prevail on the question of whether an impoundment was warranted in terms of the community caretaking function, the prosecution must demonstrate that (1) the police officer believed that the vehicle posed some threat or harm to the community or was itself imperiled, and (2) the decision to combat that threat by impounding was in keeping with established departmental routine or regulation. *Id.* at 433.

Officer Owensby testified that because all of the occupants of the vehicle were placed under arrest, "[t]here was no one to take control of the vehicle and per the police department policy, the vehicle was to be towed, and subsequent to that towing, we are to conduct what is termed an inventory search and I proceeded with that." (R. 67). Officer Owensby also testified that when Peete was initially stopped, he did not pull the car over tightly to the curb. Rather, there was approximately four feet between the curb and the passenger side tires.

Officer Owensby further testified as to the IPD's policy regarding impoundment as follows: " . . . when you have a vehicle that has been operated by a subject that you are taking to jail, that in most instances you will impound the vehicle and inventory the vehicle prior to the impoundment." (R. 98). The IPD's General Order regarding impoundment of vehicles was admitted into evidence, wherein it is stated that "if the inquiry [through the BMV] discloses the current suspension and also discloses a prior conviction for driving while suspended within the preceding 10 years, *and* the driver is *aware that he is currently suspended,* then an arrest and impoundment of the vehicle is warranted as a Class A misdemeanor." (R. 103).

In *Johnson v. State,* 553 N.E.2d 477 (Ind. 1990), the supreme court held that police are justified in impounding a vehicle when the driver has been arrested. Particularly, the court held that impoundment is proper even when the vehicle is parked on private property, so long as it is not at the home of the arrestee. *Id.* at 478–79 (citing *Deneal,* 468 N.E.2d 1029). Had Officer Owensby not made the decision to impound the automobile that Peete was driving, it would have been left unattended on a public street. Under the circumstances, we hold that the impoundment was a proper exercise of the community caretaking function and was carried out pursuant to police standard operating procedures.

### 2. The Scope of the Search

■ We next address whether the search conducted by Officer Owensby remained within the lawful scope of an inventory search. To make the showing that a challenged search comes within the inventory exception, the State must do more than offer the mere statement of a police detective that the search was conducted as a routine inventory. *Rabadi,* 541 N.E.2d at 275. To pass constitutional muster, the search must be conducted pursuant to police department standard operating procedures. *Moore,* 637 N.E.2d at 820 (citing *Fair,* 627 N.E.2d at 435). In order to defeat a charge of pretext, "the State must establish the existence of sufficient regulations and that the search at issue was conducted in conformity with them." *Fair,* 627 N.E.2d at 435.

Officer Owensby testified articulately regarding the purpose of an inventory search. His testimony revealed his understanding of the justification for the inventory exception to the search warrant requirement and his understanding that an inventory search is not investigative in nature. Officer Owensby further testified regarding the IPD's policy and procedure for inventorying the contents of impounded vehicles. Specifically, he stated that "the officer is required to go through the vehicle, the interior of the vehicle and the trunk of the vehicle to ascertain if there is any valuable property or contraband or basically it is designed to protect the private party from loss [of] the property and the wrecker lots and the police department, for liability." (R. 104). Officer Owensby testified that a list was not made in this case, because nothing of value was found in the

vehicle. The IPD's General Order on inventory searches was admitted into evidence, and Officer Owensby stated that he followed that policy during the inventory search of Peete's vehicle.

During the inventory search, Officer Owensby observed a black 35 mm. film canister with a gray top under the front passenger seat. Officer Owensby noted that the canister was in an upright position. From this information coupled with the fact that Detective Morrolf saw the front seat passenger leaning over, Officer Owensby deduced that the passenger had placed the canister under the seat following the traffic stop. Officer Owensby then opened the canister and found the cocaine.

Considering the totality of the circumstances, we conclude that Officer Owensby's actions were reasonable and remained within the scope of a lawful inventory search. The fact that Officer Owensby reflected on Detective Morrolf's observation of the front seat passenger's furtive movements, and took note of the upright position of the film canister, does not render the inventory search invalid. *See Moore,* 637 N.E.2d at 820 (the fact that a suspicion arose in the mind of the officer while in the process of completing a valid inventory search does not render the search pretextual). In conclusion, we hold that Officer Owensby's search of Peete's vehicle was conducted in a routine manner pursuant to department standard operating procedures. Peete's counsel was therefore not ineffective for failing to object to the admissibility of the cocaine. *See Lowery,* 640 N.E.2d at 1042 (holding that because appellant failed to show that trial counsel's objection to admissibility of evidence would have been sustained, counsel was not ineffective).

## CONCLUSION

Based on the foregoing, Peete voluntarily, intelligently and knowingly waived his right to a jury trial. Furthermore, Peete received effective assistance of counsel because the cocaine was seized pursuant to a lawful inventory search.

Accordingly, Peete's conviction is affirmed in all respects.

CHEZEM, J., and NAJAM, J., concur.