**James STEPHENS, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

**No. 49A02–0003–CR–136.**

Court of Appeals of Indiana.

Sept. 18, 2000.

Transfer Denied Nov. 22, 2000.

Amy L. Dell, Dell & Dell, P.C., Indianapolis, Indiana, Attorney for Appellant.

Karen M. Freeman–Wilson, Attorney General of Indiana, Timothy W. Beam, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

## OPINION

KIRSCH, Judge

A jury convicted James Stephens of burglary,[1] a Class B felony, and theft,[2] a Class D felony. Stephens presents for our review the following three restated issues:

I. Whether the trial court abused its discretion when it admitted evidence obtained in a warrantless search of Stephens's vehicle.

II. Whether the trial court erred when it admitted evidence of other crimes in which Stephens was allegedly involved.

III. Whether the trial court correctly calculated credit time for days Stephens served in jail.

We affirm.

## FACTS AND PROCEDURAL HISTORY

The facts most favorable to the judgment reveal that on May 5, 1998, Lois McDonald returned to her home on 7638 East Michigan Street in Indianapolis to find that it had been burglarized. She reported as missing her television, wallet, a gold bracelet, and two social security checks. Detective Sergeant Belle McAtee of the Marion County Sheriff's Department was assigned to investigate the incident.

A week later, on May 12, 1998, Jean Cox reported to the Marion County Sheriff's Department suspicious activity occurring in the 900 block of North Belmar Avenue, involving a van parked facing the wrong way in the street, and a man traversing back and forth between various houses and the van. Deputy Sheriff Henry Rendleman responded to the call, found Stephens in the residence of 942 North Belmar and arrested him for burglary.

Rendleman ordered the van impounded, and McAtee and Lieutenant Mike Koons conducted an inventory search of Ste-

phens's van for valuables. McAtee found a wallet and two social security checks in the van, and recognized McDonald's name in the wallet and on the checks as that of the victim in the May 5 burglary that she had been assigned to investigate. McAtee ran a computer pawn check and learned that on May 5, 1998, Stephens had pawned McDonald's television.

After receiving his *Miranda* rights, Stephens confessed to taking the checks, a gold chain and television from a house on east Michigan Street. The State charged Stephens with class B felony burglary and Class D felony theft. Stephens, after waiving his right to counsel, moved to suppress the wallet and checks seized during the inventory search of his vehicle. The trial court denied the motion. Additionally, Stephens filed a motion in limine to exclude evidence of prior bad acts or other alleged crimes, which the trial court granted. On October 12, 1999, a jury convicted Stephens as charged. On November 17, 1999, the trial court sentenced him to fourteen years' imprisonment, ordering that he serve the sentence consecutively with a previous Marion County burglary conviction. The trial court assigned Stephens fifteen days of credit time for days he served in jail pending sentencing. Stephens now appeals.

## DISCUSSION AND DECISION

### I. Inventory Search

■ Stephens appeals from the trial court's admission of the wallet and social security checks seized during the warrantless search of his van, arguing that the search was not a lawful inventory search and therefore violated his Fourth Amendment protection from unreasonable search and seizure. At the outset, we note that Stephens failed to object when the State offered the evidence at trial. Failure to object at trial to the admission of evidence results in waiver of the issue on appeal. *Woods v. State*, 677 N.E.2d 499, 504 (Ind.

---

1. *See* IC 35–43–2–1.

2. *See* IC 35–43–4–2.

1997). We nonetheless reach the issue on its merits and conclude that the search of the van and subsequent admission of the wallet and checks was proper.[3]

■ The trial court has broad discretion in ruling on the admissibility of evidence. We will not disturb its decision absent a showing of abuse of that discretion. *Moore v. State*, 637 N.E.2d 816, 818 (Ind. Ct.App.1994), *trans. denied, cert. denied,* 513 U.S. 1165, 115 S.Ct. 1132, 130 L.Ed.2d 1093 (1995). Here, Stephens argues that the admission of the evidence was erroneous because the search of the van was not a lawful inventory search, and instead constituted a pretext for a criminal investigation.

■ Article I, section 11 of the Indiana Constitution and the Fourth Amendment to the United States Constitution protect against unreasonable searches and seizures and, as a general rule, require a search warrant as a condition precedent to a lawful search. *Moore*, 637 N.E.2d at 818. However, the warrant requirement is subject to a few well-delineated exceptions. *Id.* The State bears the burden of proving that a warrantless search falls within one of the exceptions to the warrant requirement. *Id.* One such recognized exception is a valid inventory search. *Id.* at 818–19.

■ In determining the propriety of an inventory search, the initial inquiry is whether the impoundment was proper. *Id.* at 819. The State must demonstrate that: (1) the belief that the vehicle posed some threat or harm to the community or was itself imperiled was consistent with objective standards of sound policing, and (2) the decision to combat that threat by impoundment was in keeping with established departmental routine or regulation. *Id.* The question is not whether there was an absolute need to dispose of the vehicle, but whether the decision to do so was reasonable in light of the applicable standard. *Fair v. State*, 627 N.E.2d 427, 433 (Ind.1993).

■ Here, Stephens's parked van faced the wrong way on a residential street fifteen to twenty feet wide located near an intersection with "very high" motor vehicle traffic, thereby creating a public motor hazard. *Record* at 166. Further, because Stephens was placed under arrest, no one was present to take control of the vehicle. Since the van would have been left unattended in a public thoroughfare after Stephens's arrest, the decision to impound was reasonable and lawful.

■ Having decided that Rendleman was justified in ordering the van impounded, we next examine the reasonableness of the search. The search must be conducted pursuant to standard police procedures, as evidenced by the circumstances surrounding the search. *Moore*, 637 N.E.2d at 820; *id.* at 435. Mere testimony of an officer is insufficient. *Rabadi v. State*, 541 N.E.2d 271, 275 (Ind.1989).

■ In this case, pursuant to standard procedure, Rendleman telephoned the Sheriff's Department Central Records Vehicle Section ("Central Records") and provided it with the pertinent incident information, with which Central Records completed a "tow card," explaining the reason for the tow and identifying the investigator and the tow service that transported the vehicle. McAtee and Koons conducted, in Rendleman's presence, an inventory search of the vehicle for any valuable contents. McAtee found McDonald's wallet and social security checks, which she inventoried and took into custody. Rendleman took custody of the remainder of the recovered items, completed a property sheet, and placed the evidence in the Sheriff's Department Property Room.

---

3. Stephens also argues that the television and the *Miranda* consent were derivative evidence acquired as an indirect result of the unlawful search. Because we conclude that the search was lawful, we do not reach this argument.

We conclude the inventory search was proper, and the trial court did not abuse its discretion in admitting the evidence seized during the search.

## II. Evidence of Other Crimes

Stephens's motion in limine sought to exclude evidence of prior bad acts, namely other burglaries in which Stephens allegedly was involved. The trial court granted the motion. Yet, at trial both parties presented evidence related to other alleged crimes.

Specifically, Stephens cross-examined Detective Jerold Schemenaur, who was present during Stephens's confession, about statements that Schemenaur had made to Stephens during the interrogation:

> "Q: Isn't it true, Detective Schemenaur that you stated to me during. questioning: "Okay, I mean, we got to have, we've got ways of getting to the truth by polygraph or whatever. We want the truth on this and it's got to be a truthful and accurate statement." Didn't .you state that?
>
> A: Yes, I did."

*Record* at 249. By his question, and several to follow, Stephens intended to imply that the police coerced his confession. The State objected on the grounds that Stephens was taking the questions out of context, and sought to elicit from the witness additional portions of the confession transcript. Stephens did not object. In fact, on two more occasions, Stephens questioned Schemenaur about statements he made to Stephens during the confession, and Stephens did not object to the State eliciting additional portions of the transcript on its re-direct of Schemenaur. Each of Stephens's questions to Schemenaur related to other crimes about which

4. Rule Evid. 404(b) provides: "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show, action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, intent, preparation, plan, knowledge, identity, or absence

the police were questioning Stephens. He now argues that the trial court should not have admitted the evidence of other crimes, pursuant to Ind. Rule Evid. 404(b).[4] We disagree.

First, Stephens failed to object to the admission of the evidence at trial. Failure to raise the objection at trial waives appellate review. *Abdul–Musawwir v. State*, 674 N.E.2d 972, 975 (Ind.Ct. App.1996), *trans. denied* (1997). Second, the State did not present the evidence of other crimes to show that Stephens acted in conformity therewith, as prohibited by Rule Evid. 404(b). Rather, it offered the testimony to attempt to rebut Stephens's implication that his confession was not voluntary. Third, whether Stephens opened the *door* to the evidence is an admissibility of evidence determination, rulings that we reverse only upon a showing of abuse of discretion. *See Roth v. State*, 550 N.E.2d 104, 106 (Ind.Ct.App.1990), *trans. denied, appeal after remand,* 585 N.E.2d 717 (Ind. Ct.App.1992); *Fultz v. State*, 439 N.E.2d 659, 662 (Ind.Ct.App.1982). We find no abuse of discretion here. Finally, any alleged error in admitting the evidence would have been harmless in light of the other evidence presented, including McDonald's checks and wallet found in Stephens's van, and her television that he pawned. *Berry v. State*, 715 N.E.2d 864, 867 (Ind.1999)`(an error in admitting evidence will be found harmless if its probable impact on the jury, in light of all the evidence in the case, is sufficiently minor so as not to affect the substantial rights of the parties); *Barker v. State*, 695 N.E.2d 925, 931 (Ind.1998) (if defendant's conviction is supported by substantial independent evidence of guilt, then there is no substantial likelihood that the questioned evidence contributed to the conviction).

of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pre-trial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial."·

We therefore find no error in the admission of the evidence of other crimes.

### III. Credit for Time Served

■ A person imprisoned for a crime or confined awaiting trial or sentencing earns one day of credit time for each day he is imprisoned for a crime or confined awaiting trial or sentencing. IC 35–50–6–3. Determination of a defendant's pretrial credit is dependent upon (1) pretrial confinement, and (2) the pretrial confinement being a result of the criminal charge for which sentence is being imposed. IC 35–50–6–3; *Bischoff v. State,* 704 N.E.2d 129, 130 (Ind.Ct.App.1998), *trans. denied* (1999).

Here, Stephens was arrested for the McDonald burglary on July 20, 1998, and he was sentenced on November 17, 1999. The trial court ordered that Stephens serve his sentence consecutively to another Marion County burglary conviction, for which he was arrested and began accruing credit on August 4, 1998. The trial court assigned Stephens fifteen days of jail credit time, from July 20, 1998, when he was arrested on the McDonald burglary, to August 4, 1998, when he began receiving credit on the other burglary charge. Stephens argues on appeal that he is entitled to credit time from July 20, 1998, until November 17, 1999.

In support of his position, Stephens cites *Muff v. State,* 647 N.E.2d 681 (Ind.Ct.App. 1995), *trans. denied.* While out on bond on a prior forgery charge, Muff was arrested on August 24, 1993, for two counts of battery. Muff remained in custody for six months, from the date of arrest for the battery charges (August 24, 1993) through the date of sentencing for the battery charges (February 24, 1994). During that six-month period of time, on September 8, 1993, Muff's bond on the forgery charge was revoked and on November 18, 1993, he was sentenced for the forgery offense. The trial court allocated jail credit time between the two consecutive sentences for the two separate offenses, such that he received credit time for each day he spent in jail, but did not receive double credit for any period of time. On appeal, this court reversed, holding that the defendant was entitled to full credit for days served for each offense. *Muff,* 647 N.E.2d at 684. The effect was that he received credit time both on the forgery offense and the battery offenses for the period of time from September 8, 1993 through November 18, 1993. We do not agree with this result.

■ It is well-settled that where a person incarcerated awaiting trial on more than one charge is sentenced to concurrent terms for the separate crimes, IC 35–50–6–3 entitles him to receive credit time applied against each separate term. However, where he receives consecutive terms he is only allowed credit time against the total or aggregate of the terms. *Weaver v. State,* 725 N.E.2d 945, 948 (Ind.Ct.App. 2000) (citing *Bryant v. State,* 446 N.E.2d 364, 365 (Ind.Ct.App.1983); *Shane v. State,* 716 N.E.2d 391, 400 (Ind.1999); *Ragon v. State,* 654 N.E.2d 906, 907 (Ind.Ct. App.1995)).

Subsequent to *Muff,* our supreme court in *Corn v. State,* 659 N.E.2d 554, 558–59 (Ind.1995), denied an inmate serving time on an unrelated charge credit for days he spent in jail awaiting trial on a subsequent charge. The *Corn* court relied upon *Emerson v. State,* 498 N.E.2d 1301, 1302–03 (Ind.Ct.App.1986), which held that Emerson, who escaped from the Indiana State Reformatory while serving time for robbery, received credit on the aggregate of his two sentences by receiving credit on his robbery commitment. "To additionally award him credit on the escape sentence would be to award him double or extra credit, a result the legislature did not intend." *Corn,* 659 N.E.2d at 558 (quoting *Emerson,* 498 N.E.2d at 1302–03); *see also Duncan v. State,* 274 Ind. 457, 412 N.E.2d 770, 774–75 (1980) (defendant held for a period of time on two separate charges allowed only one credit for the time served). To the extent that *Muff* permits credit for time served against each sepa-

rate sentence rather than against the aggregate of the consecutive sentences, thereby resulting in double credit, we decline to follow it, and conclude that *Corn* impliedly overruled it.

■ Credit is to be applied for time spent in confinement that is the result of the charge for which the defendant is being sentenced. *Bischoff*, 704 N.E.2d at 130; *see also Sweeney v. State*, 704 N.E.2d 86, 109 (Ind.1998), *cert. denied*, 527 U.S. 1035, 119 S.Ct. 2393, 144 L.Ed.2d 793 (1999). In this case, the Record indicates that Stephens was arrested and began accruing credit on August 4, 1998, for pending charges stemming from a prior unrelated case. Because his confinement from that date forward was not a result of the charge for which he was being sentenced, namely the McDonald burglary, we conclude that Stephens was not entitled to credit time from August 4, 1998, to November 17, 1999, as he suggests. If Stephens were granted presentence credit on the *McDonald* charge for the time during which he was accruing credit on the unrelated conviction, he would effectively receive concurrent sentences, rather than consecutive sentences, as ordered by the trial court in this case. *See Corn*, 659 N.E.2d at 559; *Bischoff*, 704 N.E.2d at 130–31.

Affirmed.

FRIEDLANDER, J., and DARDEN, J., concur.