**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**

ATTORNEY FOR APPELLANT:

**PAULA M. SAUER**
Danville, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**AARON J. SPOLARICH**
Deputy Attorney General
Indianapolis, Indiana

FILED

Feb 27 2012, 9:26 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

DONALD C. NEWLIN,                )
                                 )
    Appellant-Defendant,         )
                                 )
       vs.                   )    No. 32A01-1109-CR-444
                                 )
STATE OF INDIANA,                )
                                 )
    Appellee-Plaintiff.          )

APPEAL FROM THE HENDRICKS SUPERIOR COURT
The Honorable Mark A. Smith, Judge
Cause No. 32D04-1006-FC-13

**February 27, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**VAIDIK, Judge**

## Case Summary

Donald C. Newlin appeals the trial court's failure to award him credit for time he served in Putnam County while his probation revocation in this case was pending. Because the record shows that Newlin was on probation in Putnam County when he committed the underlying offense in this case, consecutive sentences were required. Although the trial court did not originally order consecutive sentences, Newlin conceded that the court should have done so, and the court in effect corrected its earlier illegal sentence. Accordingly, the court properly found that because Newlin's probation revocation sentences were required to be served consecutively, he was not entitled to credit for the time he served in Putnam County. Also, the trial court did not abuse its discretion in ordering Newlin to serve the entirety of his previously-suspended sentence. We therefore affirm the trial court.

## Facts and Procedural History

On June 14, 2010, in Hendricks County, Indiana, Newlin stabbed his friend in the back with a fork and then bit his arm. At his initial hearing the following day, Newlin said he was not on probation or parole. Tr. p. 9. On September 1, 2010, Newlin pled guilty to Class D felony criminal recklessness (deadly weapon). This time, however, Newlin acknowledged that he was on probation in Putnam County when he committed criminal recklessness. *Id.* at 30. The trial court warned Newlin that as a result of his criminal recklessness conviction, Putnam County could revoke his probation and order him to serve the suspended portion of his sentence. *Id.* The court sentenced Newlin to 385 days in the Department of Correction, all suspended to probation. Neither the plea

agreement nor the court's sentencing order called for Newlin's criminal recklessness sentence to be served consecutive to his Putnam County sentence.[1] Appellant's App. p. 31-33.

On December 22, 2010 – while still on probation in Hendricks and Putnam counties – Newlin tested positive for oxycodone, marijuana, and methamphetamine. Newlin told his Hendricks County probation officer that he was planning to enter Salvation Army's Harbor Light in-patient substance-abuse treatment program the following week. Newlin's probation officer called Harbor Light the following week and learned that Newlin "was not in their program and did not have an appointment to come to their detox program or any other program at this agency." *Id.* at 36.

Based on these facts, the Hendricks County probation department filed a notice of probation violation on December 29, 2010. The notice alleged that Newlin tested positive for three drugs and did not enter the substance-abuse treatment program as directed. Newlin's probation revocation petition was before the same trial judge as the underlying offense.

At a bond reduction hearing in March 2011, Newlin admitted having, among numerous other convictions, a 2008 conviction in Putnam County for operating while intoxicated. Tr. p. 53. No other Putnam County conviction was referenced when discussing Newlin's extensive criminal history.

On April 26, 2011, Newlin admitted to violating his probation in Hendricks County. The trial court took his sentence under advisement. *See id.* p. 64 ("[T]his is a

---

[1] To the extent that Newlin argues that the trial court did not advise him that his Hendricks County sentence could be served consecutive to his Putnam County sentence, Newlin is correct that the proper procedure is to challenge the voluntariness of his plea agreement on post-conviction review.

3

qua[s]i opportunity or it's an opportunity for you to get yourself clean. If you are motivated to do it, I will send you to Harbor Light, you can do it, you screw it up, you are going to go to prison."). The court kept Newlin in jail pending his transfer to Harbor Light once a bed opened up so that he could complete a fourteen-day residential program. *Id.*; *see also* Appellant's App. p. 47. The court set the matter for a review hearing on May 24.

Newlin, however, was never transported to Harbor Light because Putnam County put a hold on him for violating his probation. Tr. p. 68. As a result of the hold, Newlin was not present at the May 24, 2011, review hearing because he was serving a 200-day sentence in Putnam County. *Id.* at 66. The trial court reset the matter to June 28 and noted, "It doesn't make sense to send him on to Harbor Light at this point. He's got 200 days there to serve and he won't be out until sometime in August." *Id.* When defense counsel asked if the court was going to leave Newlin's substance-abuse problem untreated, the court responded:

> Well, I mean, the order was to send him to Harbor Light right away so that he could detox and do what he needed to do, but, he's got a place to stay the next 90 days, that is the Putnam County Jail.

*Id.* The court reiterated that it had not imposed a sentence yet; rather, "the only thing I've done at this point is vacated the Harbor Light order." *Id.* at 67.

Newlin was present in court on June 28, 2011. At this time, Newlin had been in the Putnam County Jail for sixty-three days and was set to be released on August 4 at midnight. *Id.* at 70. When asked why he was in Putnam County, Newlin responded, "operating with a BAC of .15." *Id.* Despite this turn of events, Newlin still requested to

4

be sent to Harbor Light for violating his Hendricks County probation. Newlin also requested credit for the sixty-three days he had been in Putnam County. The State argued that Newlin was not entitled to the credit. Newlin confirmed with the trial court that he was on probation in Putnam County when he committed criminal recklessness in Hendricks County and that he was currently "locked up" for "the OWI out of Putnam County" because of the "dirty" drug screen in Hendricks County. *Id.* at 74. When the court asked Newlin if his Hendricks County sentence should have been consecutive to his Putnam County sentence from "the get go," Newlin responded yes. *Id.* at 75. The trial court reset the matter until Newlin was released from Putnam County.

Newlin was released from Putnam County on July 31, 2011, and was immediately returned to custody in Hendricks County. *Id.* at 82. The trial court held the final sentencing hearing on August 23. At the time, Newlin had served a total of 179 days, with 76 days in Putnam County and 103 days in Hendricks County. The trial court observed that Newlin had one of the highest risk assessments it had ever seen as a result of his prior convictions and alcohol/drug abuse. *Id.* at 92. The court also observed that Newlin violated his probation after only ninety days. As for whether Newlin was entitled to credit for the seventy-six days he served in Putnam County, the trial court said, "You can't get dual credit. If you've got 76 days on Putnam County, you can't get it here. . . . You were on probation for an offense at the time that you committed this offense. Therefore, any sentence on this case has to be consecutive . . . ." *Id.* at 93. The court sentenced Newlin to his previously-suspended sentence of 385 days in the DOC and awarded him credit of 103 days for time served, plus 103 days of good-time credit.

Newlin now appeals.

## Discussion and Decision

Newlin raises two issues on appeal. First, he contends that the trial court erred in failing to award him credit for the seventy-six days he served in Putnam County. Second, Newlin contends that the trial court erred in ordering him to serve all 385 days of his previously-suspended sentence in the DOC.

## I. Credit Time

Newlin contends that the trial court erred in failing to award him credit for the seventy-six days he served in Putnam County. Presentence jail-time credit is a matter of statutory right, not a matter of judicial discretion. *Weaver v. State*, 725 N.E.2d 945, 948 (Ind. Ct. App. 2000). Indiana inmates imprisoned awaiting trial or sentencing earn Class I jail-time credit or "one (1) day of credit time for each day [the defendant] is imprisoned for a crime or confined awaiting trial or sentencing." Ind. Code § 35-50-6-3(a). Determination of a defendant's pretrial credit is dependent upon (1) pretrial confinement and (2) the pretrial confinement being a result of the criminal charge for which sentence is being imposed. *Hall v. State*, 944 N.E.2d 538, 542 (Ind. Ct. App. 2011), *trans. denied*. When multiple unrelated charges are involved, jail-time credit operates differently depending on whether the sentences are consecutive or concurrent. *Corn v. State*, 659 N.E.2d 554, 558 (Ind. 1995); *Hall*, 944 N.E.2d at 542. In concurrent sentencing cases, Indiana Code section 35-50-6-3 entitles the defendant to receive credit time applied against each separate term; however, in consecutive sentencing cases, pretrial credit is

6

awarded against the total or aggregate of the sentence terms. *Stephens v. State*, 735 N.E.2d 278, 284 (Ind. Ct. App. 2000), *trans. denied*.

A trial court cannot order consecutive sentences absent express statutory authority. *Weaver v. State*, 664 N.E.2d 1169, 1170 (Ind. 1996). Indiana Code section 35-50-1-2(d) provides that if after being arrested for one crime, a person commits another crime:

> (1) before the date the person is discharged from probation, parole, or a term of imprisonment imposed for the first crime; or
> (2) while the person is released:
> > (A) upon the person's own recognizance; or
> > (B) on bond;
> the terms of imprisonment for the crimes *shall be served consecutively*, regardless of the order in which the crimes are tried and sentences are imposed.

(Emphasis added).

Newlin first argues that the evidence does not show "that the Putnam County probation revocation was for the same offense Newlin was on probation when he committed the Hendricks County offense." Appellant's Br. p. 8. More specifically, Newlin argues that "because there were no cause numbers before the court, there is no way to determine definitively that the offense for which Newlin was on probation at the time he committed the offense in Hendricks County was the same offense for which he was serving a sentence on a probation revocation months later." *Id.*

Even though the Putnam County cause numbers were never referenced, it is apparent from the record that Newlin served seventy-six days for violating his probation in the Putnam County OWI case and that Newlin was on probation for that same OWI when he committed criminal recklessness in Hendricks County. The record references only one Putnam County conviction for Newlin, that is, an OWI from 2008. In addition,

7

Newlin admitted at his guilty plea hearing to being on probation in Putnam County when he committed criminal recklessness in Hendricks County. Later at a review hearing Newlin confirmed that he was currently "locked up" for the OWI from Putnam County because he violated that probation by having the "dirty" drug screen in Hendricks County. Tr. p. 74. Newlin also conceded that the trial court should have originally ordered his Hendricks County criminal recklessness sentence to run consecutive to his Putnam County OWI sentence. Therefore, even though the trial court did not have the Putnam County cause numbers before it, the above timeline and Newlin's concession show that Newlin served the seventy-six-day probation revocation sentence in Putnam County for the same offense that he was on probation for when he committed criminal recklessness in Hendricks County.

Newlin next argues that even if the offenses were the same and the Hendricks County trial court should have originally ordered consecutive sentences, Appellant's Reply Br. p. 3, the court had no "authority" at this late stage of the proceedings to determine that the original Hendricks and Putnam County sentences should have been served consecutively. Appellant's Br. p. 11; *see also id.* at 9-10 ("There is simply no statute or rule that allows a trial court the discretion to essentially go back in time and modify a person's sentence.").

We, however, find that such authority exists. While a trial court typically has no authority over a defendant after he pronounces sentence, any continuing jurisdiction must derive from either the judgment itself or statute/rule, and the court is bound by any plea agreement it accepts, it is also the "general, if not unanimous, rule that a trial court has

8

the power to vacate an illegal sentence and impose a proper one," even if doing so results in an increased sentence after the erroneous sentence has been partially executed and regardless of whether the sentencing error occurred following a trial or guilty plea. *Ennis v. State*, 806 N.E.2d 804, 809 (Ind. Ct. App. 2004) (quotation omitted). Indeed, Indiana Code section 35-38-1-5 provides a mechanism to correct erroneous or illegal sentences. *See Hardley v. State*, 905 N.E.2d 399, 401-03 (Ind. 2009) (addressing similar situation where the trial court should have originally ordered consecutive sentences because the defendant was on recognizance when he committed the new offense and holding that the State can challenge an illegal sentence for the first time on appeal: "Considering the clear unacceptability of sentences that plainly exceed or otherwise violate statutory authority and the fact that the legislature has authorized the State to challenge erroneous sentences, we hold that sound policy and judicial economy favor permitting the State to present claims of illegal sentence on appeal when the issue is a pure question of law that does not require resort to any evidence outside the appellate record."). Accordingly, based on the evidence before it and Newlin's concession that his original sentences should have been consecutive, the trial court properly corrected Newlin's erroneous Hendricks County sentence by ordering it to be served consecutive to his Putnam County sentence. *See* Ind. Code § 35-50-1-2(d) (explaining that if a person commits a crime while on probation, "the terms of imprisonment for the crimes shall be served consecutively . . . ."). As a result of this correction, the probation revocation sentences in the two counties must be consecutive as well. *See* Tr. p. 77 (trial court explaining, "But, clearly, the time [in the Hendricks County probation revocation case] has to be consecutive to what he is serving

9

[in the Putnam County probation revocation case].").  And because these sentences must be consecutive, Newlin is not entitled to credit in Hendricks County for the seventy-six days he served in Putnam County because he would be getting double credit.  *See Payne v. State*, 838 N.E.2d 503, 510 (Ind. Ct. App. 2005) (observing that we should avoid construing the credit-time statutes as permitting a defendant to claim "double or extra credit" for presentence confinement), *trans. denied*.  Accordingly, the trial court did not err in not awarding Newlin credit for the seventy-six days he served in Putnam County.[2]

## II. Probation-Violation Sentence

Newlin admitted violating his probation in Hendricks County and therefore does not contest the revocation of this probation.  Instead, he contends that the trial court erred in ordering him to serve his entire suspended sentence in the DOC.

Once a trial court has exercised its grace by ordering probation rather than incarceration, "the judge should have considerable leeway in deciding how to proceed." *Prewitt v. State*, 878 N.E.2d 184, 187 (Ind. 2007).  If this discretion were not given to trial courts and sentences were scrutinized too severely on appeal, trial judges might be less inclined to order probation.  *Id.*  Accordingly, a trial court's sentencing decision for a probation violation is reviewable using the abuse of discretion standard.  *Id.*  An abuse of discretion occurs where the decision is clearly against the logic and effect of the facts and circumstances.  *Id.*

---

[2] We acknowledge that Indiana Code section 35-38-1-15 requires that written notice be given to the convicted person before an erroneous sentence may be corrected.  But given that a hearing was held at which Newlin admitted that the trial court should have originally ordered consecutive sentences and he does not complain that the lack of written notice prejudiced him in any way, we believe it would be an exercise in futility to remand this case to the trial court for written notice.

If a trial court finds that a person has violated his probation before termination of the period, the court may order execution of all or part of the sentence that was suspended at the time of initial sentencing. Ind. Code § 35-38-2-3(g). Here, we find that Newlin's criminal history and likelihood of reoffending sufficiently support the trial court's decision to order execution of all 385 days that were suspended at the time of his original sentencing. When imposing Newlin's probation-revocation sentence, the trial court explained that Newlin had one of the highest risk assessment scores it had ever seen and that Newlin was on probation for only "a little over 90 days" before violating it.[3] Tr. p. 94. The court predicted that if it were to let him out of jail, "he's going to come right back in. There is no question in my mind." *Id.* The record shows that Newlin has convictions in numerous counties for OWI (1993), battery resulting in bodily injury (1994), possession of marijuana (2004), domestic battery and disorderly conduct (2004), public intoxication (2008), OWI (2008), and two different public intoxication convictions (2009). The record also shows that Newlin has a "very long" history of alcohol and drug abuse but failed to seek treatment while on probation before. *Id.* at 86, 89. In fact, Newlin tested positive for various drugs after approximately ninety days of probation in this case. Newlin's probation officer expressed concern that if he continued to drink, the community was at risk because of his "serious history of violence against people." *Id.* at

---

[3] Newlin points out that the trial court said that by pleading guilty to Class D felony criminal recklessness, he received a benefit because the State initially charged him with a Class C felony. Even assuming the court relied on this in reaching its decision, which is questionable, we find that Newlin's criminal history and likelihood of reoffending more than justify his 385-day probation revocation sentence. Because of this, the case that Newlin relies on, *Puckett v. State*, 956 N.E.2d 1182 (Ind. Ct. App. 2011), is distinguishable. In *Puckett*, this Court found that numerous errors by the trial court did not support the trial court's order that Puckett serve all of his previously-suspended sentence. *Id.* at 1188.

11

87. The trial court did not abuse its discretion in sentencing Newlin to all 385 days of his previously-suspended sentence.

Newlin also argues that instead of sending him to the DOC, the trial court should have placed him in a residential treatment facility, like the court originally planned to do. The trial court, however, found that the reason for placing Newlin in Harbor Light in the first place had dissipated. That is, the court originally planned to send Newlin to Harbor Light for fourteen days so that he could detox. This plan was interrupted when Putnam County put a hold on Newlin for violating his probation there. Newlin ended up spending 179 days in custody, during which time Newlin, by his own admission, "definitely detoxed." *Id.* at 85. Because the reason for sending Newlin to Harbor Light was no longer valid, the trial court did not abuse its discretion in sending Newlin to the DOC. *See id.* at 77 (trial court stating, "I'm not just going to enter an order sending him to Harbor Light[] and then terminating. I mean . . . there is no monitoring there, if he wants to go to Harbor Light[] under that capacity he can go on his own and do it on his own."). We therefore affirm the trial court.

Affirmed.

ROBB, C.J., and NAJAM, J., concur.