**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**R. PATRICK MAGRATH**
Alcorn Goering & Sage, LLP
Madison, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**JODI KATHRYN STEIN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| RAYMOND RYAN MARLING, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No.  40A01-1403-CR-109 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE JENNINGS CIRCUIT COURT
The Honorable Jon W. Webster, Judge
Cause No. 40C01-1305-FA-7

**September 30, 2014**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**BAKER, Judge**

Raymond Marling appeals his convictions and thirty-eight-year aggregate sentence for Possession of Cocaine with Intent to Deliver,[1] a class B felony; Possession of a Schedule IV Controlled Substance,[2] a class D felony; two counts of Possession of a Legend Drug,[3] class D felonies; Unlawful Possession of a syringe,[4] a class D felony; and Possession of a Handgun by a Felon,[5] a class C felony. Marling argues that the trial court erred when it admitted evidence obtained as a result of a pretextual inventory search, and asserts that the evidence was insufficient to support his conviction for possession of cocaine with intent to deliver. He also maintains that the trial court erred when it determined that he was an habitual offender. Finding that the trial court did not err in admitting the evidence found during the inventory search, that the evidence is sufficient to support Marling's conviction for possession of cocaine with intent to deliver, and that the trial court properly denied Marling's motion to dismiss, we affirm the judgment of the trial court.

## FACTS

In April 2013, police were investigating the whereabouts of a missing person. Matt Loper was identified as a person of interest in that investigation, and North Vernon Police Detective Ivory Sandefur discovered that Loper and Marling were friends.

---

[1] Ind. Code § 35-48-4-1(a)(2)(C).

[2] I.C. § 35-48-4-7.

[3] Indiana Code § 16-42-19-13.

[4] I.C. § 16-42-19-18.

[5] Indiana Code § 35-47-2-23(c)(2)(B).

Detective Sandefur also discovered that Marling drove a black Dodge Avenger and found there was an active arrest warrant for Marling from Jackson County. The detective also ascertained that Marling might be involved in drug activity and that he might be in possession of a handgun. Detective Sandefur told local police departments to look for Marling.

On April 25, 2013, Detective Sandefur was investigating leads in the missing person case, along with Indianapolis Police Detective Jerry Gentry. They were driving when they were passed by a black Dodge Avenger. The detectives turned around and followed the vehicle; they also ran the license plate, which returned to Marling and his wife. The windows of the vehicle were tinted, but Detective Sandefur confirmed that the male driver appeared to be Marling. At that point, Detective Sandefur radioed to a uniformed police officer to conduct a traffic stop.

North Vernon Police Officer Jeffrey Day responded and initiated a traffic stop on County Road 350 North. Marling stopped the vehicle in the traffic lane, so that only the oncoming traffic lane was passable. Officer Day ordered Marling to step out of the car, and Detective Sandefur handcuffed him. Marling was wearing an empty shoulder holster under his shirt.

Officer Day looked inside of the vehicle and saw that there were no passengers. He observed a handgun between the driver's seat and the console; the hammer of the handgun was cocked, but the safety lock was on. Marling told Officer Day that he did not have a permit for the handgun. Officer Day took Marling to jail, where $686 was

3

inventoried from Marling's billfold. Marling asked Officer Day to contact his mother to ask if she could remove money from a black bag in the Avenger and remove the vehicle from impoundment.

North Vernon Police Sergeant Craig Kipper conducted a search of the Avenger prior to impoundment in accordance with North Vernon Police General Order 49, which provides for an inventory search prior to the impoundment of a vehicle if a driver was arrested and was driving the vehicle immediately before arrest. The inventory search included a search of the vehicle in all locations where items of value may be located, including closed and locked containers.

During his search, Sergeant Kipper first took possession of the handgun. He then found several cellphones with chargers, a clear bag with several syringes, four Clonazepam pills, a schedule IV drug, and a clear container with white powder residue. He also found a prescription pill bottle containing Intuniv, a legend drug, one Hydroxyine, a legend drug, and one Vyvanse, a schedule II drug. In the passenger compartment, Sergeant Kipper found $1,000 secured with a rubber band inside a laptop bag. In the trunk, the Sergeant found two rifles, a duffel bag containing .9mm ammunition, a box of syringes, thirty-two loose syringes, and a digital scale that looked like a cell phone. Sergeant Kipper also discovered a metal combination lockbox in the trunk; he opened the box with a screwdriver. The box held a clear baggie containing .51 grams of cocaine, various capsules containing dimethyl sulfone, a cutting agent, four baggies with white residue, and one Clonazepam.

4

Two days later, Marling called his wife from jail and told her to take the $1000 and to get everything out of storage, unless she wanted "up north" to take it. Tr. p. 447-49. He also told her that the situation was serious, that she should be scared, and that she should leave the house. He told her that if "up north comes down take him with you to collect the 2gs and show him where Dennis and Maria are staying and you can collect the 2gs from them." Tr. p. 483.

On May 1, 2013, the State charged Marling with Count I, class B felony possession of cocaine with intent to deliver; Count II, class C felony possession of cocaine and a firearm; Count III, class C felony carrying a handgun without a license; Count IV, class D felony possession of a schedule IV controlled substance; Count V, class D felony possession of a schedule II controlled substance; Counts VI and VII, two counts of class D felony possession of a legend drug; and Count VIII, class D felony unlawful possession of a syringe. Additionally, the State alleged that Marling was an habitual offender. On September 30, 2013, Marling filed a motion to suppress all the evidence discovered during the vehicle stop and subsequent inventory search. The trial court held a hearing on the motion on October 16, 2013. It denied the motion the next day.

Marling's jury trial took place on October 21-24, 2013. At the close of the State's evidence, the trial court dismissed Count V, class D felony possession on a schedule II controlled substance. The jury found Marling guilty of class B felony possession of cocaine with intent to deliver, class C felony possession of cocaine and a firearm, class A

misdemeanor carrying a handgun without a license, class D felony possession of a schedule IV controlled substance, both counts of class D felony possession of a legend drug, and class D felony unlawful possession of a syringe. In a second phase, the jury found Marling guilty of class C felony possession of a handgun by a felon, the felony enhancement to class A misdemeanor possession of a handgun without a license. In the third and final phase, Marling was found to be an habitual offender.

The trial court held a sentencing hearing on February 20, 2014. It merged the handgun convictions and imposed the following sentence: thirteen years for class B felony possession of cocaine with intent to deliver with a twenty year enhancement for the habitual offender finding, twenty-one months for each count of class D felony possession of a legend drug, twenty-one months for class D felony possession of a schedule IV controlled substance, twenty-one months for class D felony unlawful possession of a syringe, and five years for the class C felony possession of a handgun by a felon. The five-year sentence for possession of a handgun by a felon was ordered to run consecutively to the thirty-three year sentence for possession of cocaine with intent to deliver, and the twenty-one month sentences for each count of possession of a legend drug, possession of a schedule IV controlled substance, and unlawful possession of a syringe were ordered to run concurrently with each other and with the other sentences. Marling's aggregate sentence was thirty-eight years.

## DISCUSSION AND DECISION

### I. Admission of Evidence

Marling argues that the trial court erred when it admitted evidence obtained as a result of the inventory search. He contends that the trial court should have excluded the evidence because the impoundment was improper and the inventory performed by Sergeant Kipper exceeded the scope of a proper inventory search.

A trial court has broad discretion in ruling on the admissibility of evidence, and, on review, we will disturb its ruling only on a showing of an abuse of discretion. Sparkman v. State, 722 N.E.2d 1259, 1262 (Ind. Ct. App. 2000). When reviewing a decision under an abuse of discretion standard, we will affirm if there is any evidence supporting the decision. Id. A claim of error in the admission or exclusion of evidence will not prevail on appeal unless a substantial right of the party is affected. Ind. Evidence Rule 103(a). In determining whether error in the introduction of evidence affected a defendant's substantial rights, we assess the probable impact of the evidence on the jury. Sparkman, 722 N.E.2d at 1262.

The Fourth Amendment to the United States Constitution protects persons from unreasonable search and seizure and this protection has been extended to the states through the Fourteenth Amendment to the Unites States Constitution. Mapp v. Ohio, 367 U.S. 643, 650 (1961). The paramount concern of the Fourth Amendment is the reasonableness of the State's intrusion into the privacy of its citizens. Adams v. State, 762 N.E.2d 737, 740 (Ind. 2002). The reasonableness of a search is determined by

balancing the degree to which it intrudes upon an individual's privacy with the degree to which it is needed for the promotion of legitimate governmental interests. Lockett v. State, 747 N.E.2d 539, 542 (Ind. 2001). Put another way, the fundamental purpose of the Fourth Amendment "is to protect the legitimate expectations of privacy that citizens possess in their persons, their homes, and their belongings." Taylor v. State, 842 N.E.2d 327, 330 (Ind. 2006). We note that seizures conducted outside the judicial process, without prior approval by a judge or a magistrate, are per se unreasonable under the Fourth Amendment, subject only to a few specifically established and well-delineated exceptions. Warner v. State, 773 N.E.2d 239, 245 (Ind. 2002).

A valid inventory search is a well-recognized exception to the warrant requirement. Taylor, 842 N.E.2d at 330. The underlying rationale for the inventory exception is three-fold: (1) protection of private property in police custody; (2) protection of police against claims of lost or stolen property; and (3) protection of police from possible danger. Gibson v. State, 733 N.E.2d 945, 956 (Ind. Ct. App. 2000).

When analyzing the propriety of an inventory search, the threshold question is whether the impoundment itself was proper. Taylor, 842 N.E.2d at 331 (citing Woodford v. State, 752 N.E.2d 1278, 1281 (Ind. 2001). An impoundment is warranted when it is part of routine administrative caretaking functions of the police or when it is authorized by statute. Id. To prove a valid inventory search under the community caretaking function, the State must demonstrate the following: (1) the belief that the vehicle posed some threat or harm to the community or was itself imperiled was consistent with

8

objective standards of sound policing, and (2) the decision to combat that threat by impoundment was in keeping with established departmental routine or regulation. Id. The question is not whether there was an absolute need to dispose of the vehicle, but whether the decision to do so was reasonable in light of the applicable standard. Fair v. State, 627 N.E.2d 427, 433 (Ind. 1993).

Marling argues that the impoundment of his vehicle was not warranted under the community caretaking function. He maintains that, as his vehicle was "partially pulled off the roadway," other vehicles were able to pass. Appellant's Br. p. 8. However, evidence at trial established that the vehicle constituted a traffic hazard. Sergeant Kipper testified that the vehicle "was on the roadway so it was a traffic hazard." Tr. p. 254. Moreover, the videotape of the traffic stop shows that the vehicle was almost entirely blocking one lane of a two-lane road. Ex. 2. The fact that other drivers could pass by using part of the oncoming traffic lane does not mean that impoundment was unwarranted; the vehicle would have been left unattended in a public thoroughfare after Marling's arrest, therefore the decision to impound was reasonable and lawful. See Stephens v. State, 735 N.E.2d 278 (Ind. Ct. App. 2000) (holding that an impoundment was reasonable and lawful when a van would have been left unattended in a public thoroughfare following Stephens's arrest).

Having determined that the vehicle was reasonably impounded, we next examine the reasonableness of the search. Marling argues that the search of the duffel bag and lockbox exceeded the scope of a proper inventory search. To pass constitutional muster,

9

an inventory search must be conducted pursuant to standard police procedures, as evidenced by the circumstances surrounding the search. Stephens, 735 N.E.2d at 282. Mere testimony of an officer is insufficient. Id.

Here, pursuant to North Vernon Police Order 49, Sergeant Kipper was required to search the vehicle in all locations where items of value may be located; Order 49 mandates, "[i]nventory all closed or locked containers." Ex. 5. Therefore the search was conducted in accordance with standard police procedures.

Marling also argues that the search was a violation of his rights under Article I, Section 11 of the Indiana Constitution. Article I, Section 11 provides "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search or seizure, shall not be violated . . . ." Our Supreme Court has stated that vehicles are among the "effects" protected by Article I, Section 11. Brown v. State, 653 N.E.2d 77, 79 (Ind. 1995). Under Article I, Section 11, the validity of a search turns on an evaluation of the reasonableness of the officers' conduct under a totality of the circumstances. Litchfield v. State, 824 N.E.2d 356, 361 (Ind. 2005). In determining whether the police behavior was reasonable under Section 11, we consider each case on its own facts and construe the constitutional provision liberally so as to guarantee the rights of people against unreasonable searches and seizures. Brown, 653 N.E.2d at 79. The reasonableness of a search turns on a balance of "1) the degree of concern, suspicion, or knowledge that a violation has occurred, 2) the degree of intrusion the method of the

10

search or seizure imposes on the citizen's ordinary activities, and 3) the extent of law enforcement needs." Litchfield, 824 N.E.2d at 361.

Here, Marling argues that the degree of intrusion in opening the duffel bag and lockbox was high. He maintains that, because "[he] was pulled over as a result of a warrant and no violations of law had actually been observed by the arresting law enforcement," the degree of concern or suspicion was "low or nonexistent." Appellant's Br. p. 9.

However, Marling is incorrect to analyze the degree of concern or suspicion at the time of the stop. Instead, we must focus on the time at which Sergeant Kipper opened the duffel bag and the lockbox, which were in the trunk. See Moore v. State, 637 N.E.2d 816, 820 (Ind. Ct. App. 1004) (holding that the fact that an officer's suspicion arose during the course of an inventory search did not render the search pretexual); see also Fair, 627 N.E.2d at 436 n.7 ("so that as long as the impoundment is pursuant to the community caretaking function and is not a mere subterfuge for investigation, the coexistence of investigatory and caretaking motives is permissible"). At the time that Sergeant Kipper searched the trunk, he had already discovered a loaded weapon, several cell phones with chargers, a clear bag containing syringes, four Clonazepam pills, a pill bottle containing Intuniv, Hydroxyzine, and Vyvanse, and a clear container with white powder residue. Tr. p. 257-61, 275, 278-80, 361-65, 367. In addition, he had discovered $1,000 inside a laptop bag in the passenger compartment as well as two rifles in the trunk. Tr. 273, 275. Therefore, Sergeant Kipper 1) had reason to believe more items of

11

value might be located inside the duffel bag and lockbox, and that he needed to open them to ensure that he protected private property in police custody, and 2) had a high level of suspicion that Marling was involved in illegal drug activity. Therefore, we find that the inventory search was reasonable under a totality of the circumstances.

## II. Sufficiency of the Evidence

Marling next argues that his conviction for possession of cocaine with the intent to deliver was not supported by sufficient evidence.

When reviewing challenges to the sufficiency of the evidence, we do not reweigh the evidence or judge the credibility of the witnesses. Bond v. State, 925 N.E.2d 773, 781 (Ind. Ct. App. 2010). Rather, we consider only the evidence most favorable to the verdict and the reasonable inferences drawn therefrom, and we will affirm if the evidence and those inferences constitute substantial evidence of probative value to support the verdict. Id. Reversal is appropriate only when a reasonable trier of fact would not be able to form inferences as to each material element of the offense. Id.

In order to prove that Marling had possessed cocaine with the intent to deliver, the State was required to prove that 1) Marling possessed the cocaine 2) with the intent to deliver. Ind. Code § 35-48-4-1. Marling does not argue that he did not possess the cocaine. Rather, he argues that the amount he possessed, .51 grams, was insufficient to show that he had the intent to deliver.

As intent is a mental state, absent an admission, the trier of fact must resort to reasonable inferences based upon an examination of the surrounding circumstances to

12

determine whether, from the person's conduct and the natural consequences thereof, a showing or inference of intent to commit that conduct exists. Stokes v. State, 801 N.E.2d 1263, 1272 (Ind. Ct. App. 2004). Marling concedes that intent to deliver may be proved by circumstantial evidence. Id. But he maintains that there was not enough circumstantial evidence to allow a reasonable trier of fact to infer that he intended to deliver the cocaine.

The State presented evidence that the following indicators of intent to deliver were present: 1) a digital scale masquerading as a cell phone, 2) multiple cell phones for single use and disposal, 3) a large amount of cash, 4) firearms, 5) a large amount of a cocaine cutting agent, and 6) empty baggies. Tr. p. 292-98, 305. This Court has held that possession of a large quantity of drugs, money, plastic bags, and other paraphernalia is circumstantial evidence of intent to deliver. Wilson v. State, 754 N.E.2d 950 (Ind. Ct. App. 2001). While Marling is correct that a large quantity of drugs can constitute circumstantial evidence, it is clearly not the only circumstantial evidence that can support a conviction. When considering the evidence presented, we find it sufficient to support Marling's conviction for possession of cocaine with intent to deliver.

### III. Habitual Offender Finding

Marling also maintains that the trial court could not find him to be an habitual offender under Indiana Code section 35-50-2-8(b)(3). A question of statutory interpretation is a matter of law to be determined de novo. Maynard v. State, 859 N.E.2d 1272, 1274 (Ind. 2007).

13

Marling argues that the trial court should not have found him to be an habitual offender because, at the time he was sentenced, Indiana Code section 35-50-2-8(b)(3)[6] did not allow for a habitual offender enhancement when all of the following applied:

(A) The offense is an offense under IC 16-42-19 or IC 35-48-4.
(B) The offense is not listed in section 2(b)(4) of this chapter
(C) The total number of unrelated convictions that the person has for
    (i) dealing in a legend (drug under IC 16-42-19-27;
    (ii) dealing in or cocaine or a narcotic drug (IC 35-48-4-1);
    (iii) dealing in a schedule I, II, III controlled substance (IC 35-48-4-2);
    (iv) dealing in a schedule IV controlled substance (IC 35-48-4-3); and
    (v) dealing in a schedule V controlled substance (IC 35-48-4-4);
does not exceed one (1)

Marling notes that because his offense falls under Indiana Code chapter 35-48-4 and he has no prior dealing convictions under Indiana Code section 35-50-2-8(b)(3)(C), the only question is to determine whether his offense is listed in Indiana Code section 35-50-2-2(b)(4).

As previously stated, the felony offense at issue here is possession of cocaine with intent to deliver under Indiana Code section 35-48-4-1. One of the offenses listed in Indiana Code section 35–50–2–2(b)(4) is "dealing in cocaine or a narcotic drug . . . if the court finds that the person possessed a firearm at the time of the offense. Ind. Code § 35–50–2–2(b)(4)(O). Here, at the time of Marling's motion to dismiss, the jury had already found that he possessed a firearm at the time he possessed the cocaine with the intent to deliver. Appellant's App. p. 81-82; Tr. p. 553-54. The trial court made the same finding when it denied the motion to dismiss. Appellant's App. p. 82. Therefore, subsection

---

[6] Indiana Code section 35-50-2-8 was amended effective July 1, 2014.

(b)(3)(B) did not apply, and it was not error for the habitual offender enhancement to be attached to Count I, possession of cocaine with intent to deliver. The trial court did not err in denying Marling's motion to dismiss.

The judgment of the trial court is affirmed.

KIRSCH, J., and ROBB, J., concur.

15